SMITH, APPELLANT, *v.* LEIS, SHERIFF, APPELLEE.

[Cite as *Smith v. Leis,* 106 Ohio St.3d 309, 2005-Ohio-5125.]

(No. 2004–1104—Submitted June 15, 2005—Decided October 12, 2005.)

310

LANZINGER, J.

{¶ 1} This is a direct appeal from a judgment dismissing a petition for a writ of habeas corpus that challenges the imposition of a preconviction, cash-only bond. We hold that the appellant, Garey Smith, is not entitled to the requested writ, because he has now been convicted. Nevertheless, while this case is moot as to Smith, the issue raised is properly before us because we find that it is of great public or general interest. After due consideration, we hold that cash-only bail is unconstitutional under Section 9, Article I of the Ohio Constitution and is not authorized by either Crim.R. 46 or R.C. 2937.222.

{¶ 2} On May 16, 2001, Smith was arrested for the shooting of four individuals and his bond was set at $250,000. One of the victims died, and three were seriously wounded. Smith was indicted on one count of aggravated murder with a death-penalty specification, three counts of attempted murder, six counts of felonious assault with firearm specifications, and one count of having a weapon while under a disability.

{¶ 3} Smith claimed that he had shot one of the victims accidentally and shot the other three, including the one who died, in self-defense. The jury found Smith guilty of the lesser included offense of murder, two counts of attempted murder, six counts of felonious assault with accompanying firearm specifications, and having a weapon while under a disability. The Hamilton County Court of Common Pleas sentenced Smith to an aggregate prison term of 47 years to life. He appealed.

{¶ 4} The Court of Appeals for Hamilton County reversed and remanded the cause for a new trial because the trial court had denied Smith his constitutional right to self-representation. *State v. Smith,* Hamilton App. No. C–020610, 2004-Ohio-250, 2004 WL 102285.

{¶ 5} On remand, Smith was returned to the custody of appellee, Hamilton County Sheriff Simon Leis Jr., pending his appearance at a bond hearing in the common pleas court. At the hearing, the state argued that Smith was a "very, very dangerous man" because the undisputed evidence established that he had shot four people, one fatally.

{¶ 6} The common pleas court stated, "As far as the bond, this is no longer a death penalty situation, so I do have to set a bond." The court noted that the charges were extremely serious, that Smith had previously been convicted of

having a weapon while under a disability as well as many of the charged offenses, and that his prison term was 47 years to life. The court concluded that based on these facts, Smith would have a great reason to flee if he were to be released on bond:

{¶ 7} "If you're convicted of this again, technically, we can say that you will not live outside of prison the rest of your life. So you do have reason to run. Not saying that you would, but you certainly have a reason to at this point." The court concluded by setting Smith's bond at "$1,000,000 straight, cash only."

{¶ 8} Smith filed a motion to reduce the bond as being excessive. This motion was denied. Smith also filed a petition in the court of appeals for a writ of habeas corpus to grant him relief with issuance of a reasonable bond. Sheriff Leis's motion to dismiss the petition was granted.

{¶ 9} Now in his appeal as of right, Smith asserts that the court of appeals erred in dismissing his habeas corpus petition because his million-dollar, cash-only bond violated Section 9, Article I of the Ohio Constitution and was also not authorized by Crim.R. 46.

{¶ 10} On January 26, 2005, we appointed counsel for Smith and invited an amicus brief from the Attorney General. *Smith v. Leis*, 104 Ohio St.3d 1459, 2005-Ohio-204, 821 N.E.2d 576. We ordered the parties and the State Solicitor, on behalf of the Attorney General, to brief the question "Is a cash-only bond authorized under the amended versions of Section 9, Article I, Ohio Constitution, Crim.R. 46, and R.C. 2937.222? See *State ex rel. Jones v. Hendon* (1993), 66 Ohio St.3d 115, 609 N.E.2d 541, and *State ex rel. Baker v. Troutman* (1990), 50 Ohio St.3d 270, 553 N.E.2d 1053." Id.

{¶ 11} Smith's case is now before us; however, we will consider the issue of mootness before consideration of the merits.

## Mootness

{¶ 12} In October 2004, following the parties' submission of their initial briefs, the state retried Smith. A jury convicted him of several of the originally charged offenses but could not reach a verdict on others. Smith was sentenced accordingly and is currently incarcerated.

{¶ 13} The state argues that because Smith has now been convicted and imprisoned after retrial, his claims concerning pretrial bail are now moot. The state correctly observes that Smith is no longer entitled to the requested writ of habeas corpus. "[H]abeas corpus in Ohio is generally appropriate in the criminal context only if the petitioner is entitled to immediate release from prison or some other type of physical confinement." *State ex rel. Smirnoff v. Greene* (1998), 84 Ohio St.3d 165, 167, 702 N.E.2d 423. Following conviction, any error regarding pretrial bail is generally moot. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-

6235, 818 N.E.2d 229, ¶ 39. Therefore, Smith is not entitled to extraordinary relief in habeas corpus.

{¶ 14} Nonetheless, although Smith is not entitled to the writ, the mootness of his appeal does not affect its reviewability insofar as it challenges the trial court's imposition of cash-only bail. " 'Although a case may be moot with respect to one of the litigants, this court may hear the appeal where there remains a debatable constitutional question to resolve, or where the matter appealed is one of great public or general interest.' " *State ex rel. White v. Kilbane Koch,* 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 16, quoting *Franchise Developers, Inc. v. Cincinnati* (1987), 30 Ohio St.3d 28, 30 OBR 33, 505 N.E.2d 966, paragraph one of the syllabus.

{¶ 15} This appeal presents a properly debatable constitutional issue, i.e., whether Section 9, Article I of the Ohio Constitution, as amended, authorizes cash-only bail. This issue is of great public or general interest because it affects the types of bail that trial courts are authorized to grant in criminal cases throughout the state. See *State v. Brooks* (Minn.2000), 604 N.W.2d 345, 348 ("cash only bail is an important public issue of statewide significance upon which this court should rule"); *State v. Briggs* (Iowa 2003), 666 N.W.2d 573, 576 ("Questions resting on the nature and propriety of cash only bail are of a pressing public interest. The imposition of cash only bail is a regular occurrence in our district courts. The constitutional implications of this form of bail are of great relevance for members of the public, the bar, and the judiciary. The need to provide guidance on this issue is manifest").

{¶ 16} As illustrated in Smith's case, cash-only preconviction bail is frequently effective for too brief a period to be fully litigated before its expiration.[1] See, e.g., *Brooks,* 604 N.W.2d at 348 ("Most pretrial bail issues are, by definition, short-lived and failure to decide this issue could have a continuing adverse impact on those defendants who are unable to post cash only bail"); *Briggs,* 666 N.W.2d at 576–577 ("in the absence of authoritative guidance, it is highly likely this issue will recur, potentially resulting in varied and inconsistent interpretations of important constitutional provisions").

{¶ 17} Therefore, because this appeal presents a constitutional question of great public interest, its mootness is no bar to our consideration of the merits of Smith's claims.

---

1. This case does not appear, however, to fall within this mootness exception, which also requires that the case be capable of repetition, yet evading review. See *State v. Tuomala,* 104 Ohio St.3d 93, 2004-Ohio-6239, 818 N.E.2d 272, ¶ 7. That exception further requires "a reasonable expectation that *the same complaining party* will be subject to the same action again." (Emphasis added.) *State ex rel. Calvary v. Upper Arlington* (2000), 89 Ohio St.3d 229, 231, 729 N.E.2d 1182. With his lengthy criminal sentence, it is unlikely that Smith again will be subject to the same cash-only preconviction bail.

Propriety of Cash–Only Pretrial Bail Before 1998 Amendment to
Section 9, Article I, Ohio Constitution, 1998 Amendment to
Crim.R. 46, and 1999 Enactment of R.C. 2937.222

{¶ 18} In 1802, Ohio's first Constitution provided in Section 12, Article VIII, that "all persons shall be bailable by sufficient sureties, unless for capital offenses, where the proof is evident or the presumption great" and provided in Section 13, Article VIII that "[e]xcessive bail shall not be required." See, also, Eighth Amendment to the United States Constitution ("Excessive bail shall not be required").

{¶ 19} The 1851 Ohio Constitution moved the bail provisions to Section 9, Article I:

{¶ 20} "All persons shall be bailable by sufficient sureties, except for capital offences where the proof is evident, or the presumption great. Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted." The 1851 version of Section 9, Article I remained effective until January 1, 1998. 1997 Sub.H.J.Res. No. 5, 147 Ohio Laws, Part IV, 9014, 9016.

{¶ 21} To implement the bail provisions of Section 9, Article I, we adopted Crim.R. 46 in 1973, which provided before its most recent amendment on July 1, 1998:

{¶ 22} "(A) Purpose of and right to bail. The purpose of bail is to ensure that the defendant appears at all stages of the criminal proceedings. All persons are entitled to bail, except in capital cases where the proof is evident or the presumption great.

{¶ 23} " * * *

{¶ 24} "(C) Preconviction release in serious offense cases. Any person who is entitled to release under division (A) of this rule shall be released on personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judge or magistrate, unless the judge or magistrate determines that release will not ensure the appearance of the person as required. Where a judge or magistrate so determines, he or she, either in lieu of or in addition to the preferred methods of release stated above, shall impose any of the following conditions of release that will reasonably ensure the appearance of the person for trial or, if no single condition ensures appearance, any combination of the following conditions:

{¶ 25} " * * *

{¶ 26} "(4) Require the execution of bail bond with sufficient solvent sureties, the execution of a bond secured by real estate in the county, or the deposit of

cash or the securities allowed by law in lieu of a bond." See 69 Ohio St.3d CXXXV (effective July 1, 1994).

{¶ 27} The General Assembly, for its part, enacted R.C. 2937.22, which explains that bail "may take any of the following forms:

{¶ 28} "(A) The deposit of cash by the accused or by some other person for him;

{¶ 29} "(B) The deposit by the accused or by some other person for him in form of bonds of the United States, this state, or any political subdivision thereof in a face amount equal to the sum set by the court or magistrate. In case of bonds not negotiable by delivery such bonds shall be properly endorsed for transfer.

{¶ 30} "(C) The written undertaking by one or more persons to forfeit the sum of money set by the court or magistrate, if the accused is in default for appearance, which shall be known as a recognizance." 128 Ohio Laws 108 (effective January 1, 1960).

{¶ 31} A writ of habeas corpus was granted to compel a trial court judge to set a reasonable preconviction bail for an accused charged with noncapital offenses in *Locke v. Jenkins* (1969), 20 Ohio St.2d 45, 49 O.O.2d 304, 253 N.E.2d 757. We recognized that the "right to bail under [Section 9, Article I of the Ohio Constitution] is absolute, the only exception being for capital offenses" and that "[t]here is no discretion in the trial court in such matters." Id. at 46, 49 O.O.2d 304, 253 N.E.2d 757.

{¶ 32} We also granted a writ of mandamus to compel a court of common pleas to change its bail bond form, which required sureties to consent to forfeiture of deposited cash or securities to pay fines and costs assessed upon conviction and unsatisfied by the defendant. *State ex rel. Baker v. Troutman* (1990), 50 Ohio St.3d 270, 553 N.E.2d 1053. We held that by requiring use of the bond deposit to pay unsatisfied fees and costs, the procedure set forth in the form constituted excessive bail prohibited by Section 9, Article I of the Ohio Constitution "because it placed limiting conditions on bail that were unrelated to appearance of the accused." Id. at 272, 553 N.E.2d 1053. We held that the constitutional right to "nonexcessive bail *on approval of sufficient sureties*" was absolute, citing *Locke v. Jenkins*, 20 Ohio St.2d 45, 49 O.O.2d 304, 253 N.E.2d 757. (Emphasis added.) *Baker* at 271, 553 N.E.2d 1053.

{¶ 33} Later, we reaffirmed *Baker* and *Locke* by finding that the "[a]ll persons shall be bailable by sufficient sureties" clause of Section 9, Article I as applied to noncapital cases "guarantee[d] an accused an absolute right to bail in such cases * * * and to have a surety post bail on his behalf." We held that bail bondsmen were entitled to a writ of mandamus to compel a trial court clerk to accept surety

bonds where "cash only" bonds were set. *State ex rel. Jones v. Hendon* (1993), 66 Ohio St.3d 115, 118, 609 N.E.2d 541.

{¶ 34} After finding in *Jones* that Section 9, Article I was silent as to the forms that bail may take and that Crim.R. 46(C) vested discretion in the judge to impose any of the rule's five conditions to ensure an accused's appearance, we examined the fourth condition, former Crim.R. 46(C)(4), under which the court may "[r]equire the execution of bail bond with sufficient solvent sureties, the execution of a bond secured by real estate in the county, or the deposit of cash or the securities allowed by law in lieu thereof." See former Civ.R. 46(C)(4), 52 Ohio St.3d liv (effective July 1, 1990). We concluded that once a judge had chosen the bond amount there was no legitimate purpose in further specifying the form of the bond which may be posted:

{¶ 35} *"Indeed, the only apparent purpose in requiring a 'cash only' bond to the exclusion of the other forms provided in [former] Crim.R. 46(C)(4) is to restrict the accused's ' access to a surety and, thus, to detain the accused in violation of Section 9, Article I*. We found such a practice inappropriate in *State ex rel. Baker v. Troutman,* supra, and reaffirm that finding here.

{¶ 36} "Accordingly, we find that where a judge imposes a bond as a condition of release under Crim.R. 46(C)(4), the judge's discretion is limited to setting the amount of the bond. *Once that amount is set, and the accused exercises his constitutional right to enlist a surety to post bail on his behalf,* that being one of the options set forth in Crim.R. 46(C)(4), *the clerk of courts must accept a surety bond to secure the defendant's release, provided the sureties thereon are otherwise sufficient and solvent."* (Emphasis added.) Id. at 118, 609 N.E.2d 541.

{¶ 37} Therefore, pursuant to *Jones* and *Baker,* before the amendment to Section 9, Article I of the Ohio Constitution, which became effective January 1, 1998, an accused such as Smith who was charged with a noncapital offense had an absolute constitutional right to bail by sufficient sureties. Consequently, then, a cash-only requirement for bail was unconstitutional.

## 1998 Amendment to Section 9, Article I, Ohio Constitution, 1998 Amendment to Crim.R. 46, and 1999 Enactment of R.C. 2937.222

{¶ 38} In 1997, the General Assembly proposed an amendment to Section 9, Article I of the Ohio Constitution "to permit a court to not grant bail in certain circumstances to persons who allegedly commit a felony and also pose a substantial risk of serious physical harm to others or to the community." 1997 Sub.H.J.Res. No. 5, 147 Ohio Laws, Part IV, 9014. The amendment was adopted by Ohio voters in the November 4, 1997 general election and took effect January 1, 1998. Id. at 9016.

{¶ 39} Section 9, Article I, with the amendment italicized, now provides:

{¶ 40} "All persons shall be bailable by sufficient sureties, except for a person who is charged with a capital offense where the proof is evident or the presumption great, *and except for a person who is charged with a felony where the proof is evident or the presumption great and where the person poses a substantial risk of serious physical harm to any person or to the community. Where a person is charged with any offense for which the person may be incarcerated, the court may determine at any time the type, amount, and conditions of bail.* Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted.

{¶ 41} *"The general assembly shall fix by law standards to determine whether a person who is charged with a felony where proof is evident or the presumption great poses a substantial risk of serious physical harm to any person or to the community. Procedures for establishing the amount and conditions of bail shall be established pursuant to Article IV, Section 5(B) of the Constitution of the state of Ohio."*

{¶ 42} Pursuant to the constitutional amendment, the General Assembly enacted R.C. 2937.222, effective July 29, 1999, which provides for a hearing to determine whether certain accused felons should be denied bail and which specifies the evidence the trial court must consider in making that determination.

{¶ 43} In addition, we amended Crim.R. 46, effective July 1, 1998, to specify the following types and amounts of bail and amendments to an initial bond order:

{¶ 44} "(A) Types and amounts of bail

{¶ 45} "Any person who is entitled to release shall be released upon one or more of the following types of bail in the amount set by the courts:

{¶ 46} "(1) The personal recognizance of the accused or an unsecured bail bond;

{¶ 47} "(2) A bail bond secured by the deposit of ten percent of the amount of the bond in cash. Ninety percent of the deposit shall be returned upon compliance with all conditions of the bond;

{¶ 48} "(3) A surety bond, a bond secured by real estate or securities as allowed by law, or the deposit of cash, *at the option of the defendant.*

{¶ 49} " * * *

{¶ 50} "(E) Amendments

{¶ 51} "A court, at any time, may order additional or different types, amounts, or conditions of bail." (Emphasis added.)

{¶ 52} The parties to this case have briefed the impact of these amendments and newly enacted provisions upon the court's previous holdings in *Baker* and *Jones* that an accused charged with a noncapital offense has an absolute constitutional right to bail by sufficient sureties.

1998 Amendment to Section 9, Article I, Ohio Constitution

{¶ 53} Smith asserts that cash-only bond or bail violates Section 9, Article I of the Ohio Constitution. The state counters that the 1998 amendment to Section 9, Article I gives courts greater authority to determine the types, amounts, and conditions of bail and empowers those courts to grant cash-only bonds as a type of bail.

{¶ 54} Initially, we must determine whether it is necessary to address the constitutional issue. The Attorney General asserts that because this case can be resolved based upon Crim.R. 46, we need not reach the constitutional question, correctly observing that courts decide constitutional issues only when absolutely necessary. See *State ex rel. Essig v. Blackwell*, 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 34, quoting *State ex rel. DeBrosse v. Cool* (1999), 87 Ohio St.3d 1, 7, 716 N.E.2d 1114.

{¶ 55} Smith, however specifically raises the constitutionality of cash-only bail orders, and the state expressly claims that the amended constitutional provision permits cash-only bail. The Constitution will prevail over the rule if, as the state asserts, Section 9, Article I empowers courts to grant cash-only bail even if Crim.R. 46 prohibits this type of bail. See *State ex rel. Ohio Roundtable, Inc. v. Taft* (1996), 76 Ohio St.3d 643, 644, 670 N.E.2d 231, citing *State ex rel. Huebner v. W. Jefferson Village Council* (1995), 75 Ohio St.3d 381, 383–384, 662 N.E.2d 339 ("reaffirming [the] principle that [a] subordinate authority must always yield to [a] contrary paramount authority, *i.e.*, the Ohio Constitution"). This constitutional issue is the preeminent reason why this case, while moot as to Smith, may be heard on its merits.

{¶ 56} Furthermore, our statement in *Jones*, 66 Ohio St.3d at 118, 609 N.E.2d 541, that "Section 9, Article I is silent as to the forms which bail may take" does not mean that Crim.R. 46, rather than the Ohio Constitution, is conclusive. Otherwise, our holding in *Jones* that a cash-only bond violated an accused's Section 9, Article I constitutional right to sufficient sureties would have been unnecessary. Id. As Smith persuasively contends, "The constitutional provision obviously does not prescribe which of various types of bail or bond may be imposed—but it does mandate that defendants have access to sufficient sureties." Thus we will address the constitutional issue.

{¶ 57} We must analyze the 1998 amendment to determine whether Section 9, Article I of the Ohio Constitution was modified to abrogate the constitutional prohibition against cash-only bail recognized by this court in *Jones*. "Generally speaking, in construing the Constitution, we apply the same rules of construction that we apply in construing statutes." *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 14; *Miami Cty. v. Dayton* (1915), 92 Ohio St. 215, 223, 110 N.E. 726.

{¶ 58} The rules of statutory construction when applied to Section 9, Article I, as amended, lead us to conclude that the Ohio Constitution still prohibits cash-only bail.

{¶ 59} First, notwithstanding the state's arguments to the contrary, the new sentence in the 1998 amendment permitting courts to "determine at any time the type, amount, and conditions of bail" does not warrant a different construction of the "sufficient sureties" provision. " 'Where provisions of the Constitution address the same subject matter, they must be read *in pari materia* and harmonized if possible.' " *State ex rel. Toledo v. Lucas Cty. Bd. of Elections* (2002), 95 Ohio St.3d 73, 78, 765 N.E.2d 854, quoting *Toledo Edison Co. v. Bryan* (2000), 90 Ohio St.3d 288, 292, 737 N.E.2d 529. That is, " '[i]t is our duty to give a construction to the Constitution as will make it consistent with itself, and will harmonize and give effect to all its various provisions.' " *State ex rel. Taylor v. French* (1917), 96 Ohio St. 172, 189, 117 N.E. 173, quoting *Hill v. Higdon* (1855), 5 Ohio St. 243, 248, 1855 WL 70.

{¶ 60} Construing the clause "[a]ll persons shall be bailable by sufficient sureties" in conjunction with the clause that grants courts authority to "determine at any time the type, amount, and conditions of bail," it is evident that the latter sentence does not authorize bail that would violate an accused's access to a surety. Adopting the state's contrary interpretation would not give effect to the "sufficient sureties" clause and would render it nugatory. This could not have been the intent of the General Assembly in proposing the amendment or the electorate in passing it. See *State ex rel. Thompson v. Spon* (1998), 83 Ohio St.3d 551, 554, 700 N.E.2d 1281, quoting *State v. Wilson* (1997), 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (" 'In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body' ").

{¶ 61} The Attorney General similarly concedes that "the constitutional amendment, by providing for outright denial of bail, further strengthens the case against achieving a *de facto* denial of bail without satisfying the rules for a true denial of bail." The Attorney General further concludes that the intent of the constitutional amendment was merely to increase those categories of persons to whom bail may be denied entirely, and not to restrict an accused's constitutional right of access to a surety.

{¶ 62} Second, Section 9, Article I unambiguously provides that all persons charged with an offense "shall be bailable by sufficient sureties." There are two exceptions to this general rule. The first is for a person charged with a capital offense when the proof is evident or the presumption great, and the second is for a person charged with a felony when the proof is evident or the presumption great and who poses a substantial risk of serious physical harm to any person or

to the community. In construing this language, we "read words and phrases in context according to the rules of grammar and common usage." *State ex rel. Lee v. Karnes,* 103 Ohio St.3d 559, 2004-Ohio-5718, 817 N.E.2d 76, ¶ 23. It is a "well-established rule that 'when it is used in a statute, the word "shall" denotes that compliance with the commands of that statute is *mandatory*.' " (Emphasis sic.) *State ex rel. Adams v. Aluchem, Inc.,* 104 Ohio St.3d 640, 2004-Ohio-6891, 821 N.E.2d 547, ¶ 12, quoting *Dept. of Liquor Control v. Sons of Italy Lodge 0917* (1992), 65 Ohio St.3d 532, 534, 605 N.E.2d 368. A "surety" is "[a] person who is primarily liable for the payment of another's debt or the performance of another's obligation." Black's Law Dictionary (8 Ed.2004) 1482.[2]

{¶ 63} Third, this construction of Section 9, Article I is consistent with our precedent in *Baker* and *Jones,* which construed the term "sufficient sureties" before the 1998 amendment. We presume that when it proposed the 1998 amendment to Section 9, Article I, the General Assembly intended that *Jones* and *Baker* remain viable precedent. See, e.g., *State ex rel. Besser v. Ohio State Univ.* (2000), 87 Ohio St.3d 535, 539, 721 N.E.2d 1044 ("There is also no evidence that the General Assembly intended its 1996 repeal of R.C. 1333.51 as part of Am.Sub.S.B. No. 2 to represent a departure from long-standing precedent exempting trade secrets from disclosure under R.C. 149.43").

{¶ 64} Fourth, even if the meaning of Section 9, Article I were ambiguous, the stated purpose of the amendment indicates that the General Assembly did not intend to overrule precedent by permitting cash-only bail. "If the meaning of a provision cannot be ascertained by its plain language, a court may look to the purpose of the provision to determine its meaning." *Jackson,* 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 14. As mentioned, the amendment's stated purpose was to authorize courts to *deny* bail in more circumstances, i.e., to accused felons who pose a substantial risk of serious physical harm to others or to the community. 147 Ohio Laws, Part IV, 9014. As one commentator noted, the 1998 amendment was "[p]romoted as an 'anti-crime' measure * * * [to] reduce[ ] the constitutional right to bail for persons charged with a felony."[3] Baldwin's Ohio Revised Code Annotated, 1997 Editor's Comment to Section 9, Article I, Ohio Constitution. Thus, the amendment to Section 9, Article I was designed to

---

2. Although the state suggested for the first time at oral argument that cash could constitute a surety, we find no support for this novel proposition, which is contrary to the ordinary definition of "surety."

3. "Proponents [of the amendment] envisioned that bail would be denied to violent offenders such as persons charged with drug-related crimes who threaten witnesses, repeat drunk drivers, and individuals facing felony domestic relations charges." Baldwin's Ohio Revised Code Annotated, 1997 Editor's Comment to Section 9, Article I, Ohio Constitution.

expand the types of offenses and circumstances under which bail could be *denied,* *not to limit an accused's access to a surety once bail is granted.*

{¶ 65} Fifth, courts of other jurisdictions have reached similar conclusions in either holding or observing that cash-only bail orders violate the constitutional right of certain accused persons to be "bailable by sufficient sureties." *Brooks,* 604 N.W.2d at 354 ("Article I, Section 7 of the Minnesota Constitution prohibits a court from setting a monetary bail amount that can be satisfied only by a cash deposit in the full amount of bail set by the court, * * * thereby restricting [the accused's] right to post bail by providing alternative forms of sufficient surety"); *State v. Rodriguez* (Mont.1981), 192 Mont. 411, 418–419, 628 P.2d 280 ("A cash bail requirement may also effectively undermine the constitutional guarantee of bail by 'sufficient sureties' "); *Lewis Bail Bond Co. v. Madison Cty. Gen. Sessions Court* (Nov. 12, 1997), Tenn.App. No. C–97–62, 1997 WL 711137, *5 ("If the judge were held to have discretion to require a cash-only bond, he would also arguably have the power, for instance, to demand that a defendant put up qualifying real estate in order to secure his release. If a particular defendant had no qualifying real estate, such a requirement could effectively detain the accused in violation of Article I, § 15 of the Tennessee Constitution * * * which provide[s] that 'all defendants shall be bailable by sufficient sureties' "); *State v. Golden* (La.App.1989), 546 So.2d 501, 503 ("The inherent power of a court cannot be exercised to supersede the express constitutional mandate that before or during trial a person *shall* be bailable by *sufficient surety* ") (emphasis sic); but, cf., *State v. Briggs* (Iowa 2003), 666 N.W.2d 573, 583 (Iowa's constitutional requirement that all persons shall be bailable by sufficient sureties does not preclude cash-only bond, but "if the accused shows that the bail determination absolutely bars his or her utilization of a surety of some form, a court is constitutionally bound to accommodate the accused's predicament"); *Ex Parte Singleton* (Ala.Crim.App.2004), 902 So.2d 132 (following *Briggs* case). See, also, Buro, Bail—Defining Sufficient Sureties—The Constitutionality of Cash–Only Bail: State v. Briggs, 666 N.W.2d 573 (Iowa 2003) (2004), 35 Rutgers L.J. 1407, 1408 (criticizing the Iowa Supreme Court decision in *Briggs* because it "neither interpreted [Iowa's sufficient-sureties] clause in accordance with its common meaning, nor did it give substantial weight to the historical development of bail").

{¶ 66} Therefore, given the language of Section 9, Article I of the Ohio Constitution, the explicit purpose of the 1998 amendment, the lack of a contrary unambiguous intent by the General Assembly or the electorate to depart from the court's precedent construing Section 9, Article I, and persuasive precedent from other jurisdictions considering this issue, we hold that *Baker* and *Jones* remain good law and that Section 9, Article I prohibits cash-only bail because it infringes upon an accused's constitutional right to bail by sufficient sureties.

1998 Amendment to Crim.R. 46

{¶ 67} Smith next asserts that the trial court's imposition of a cash-only bond also violates Crim.R. 46, as amended in 1998. The Attorney General agrees with Smith. The state counters that Crim.R. 46(E) authorized the trial court's cash-only bail order. For the following reasons, Smith and the Attorney General are correct.

{¶ 68} First, Crim.R. 46(E) must be construed in accordance with Crim.R. 46(A), which defines the three types of bonds permitted. Crim.R. 46(E)—much like the 1998 amendment to Section 9, Article I of the Ohio Constitution—provides that courts, "at any time, may order additional or different types, amounts, or conditions of bail." But Crim.R. 46(E) is captioned "Amendments." In Smith's case it is uncontroverted that bail was never amended. Crim.R. 46(A) lists the possible types of bail, including "[a] surety bond, a bond secured by real estate or securities as allowed by law, or the deposit of cash, *at the option of the defendant*." (Emphasis added.) Thus, even under amended Crim.R. 46(E), trial courts are not authorized to impose a cash-only condition on bail or bond; they are authorized to change the type of bond (i.e., those listed in Crim.R. 46(A)) at any time. It is the choice of the defendant to post cash as a deposit to secure the bond posted under Crim.R. 46(A)(3).

{¶ 69} As the Attorney General cogently notes, the rule amendment gives a trial court "greater discretion in the *factors* it may consider in seeking bail and the *conditions* of bail it may impose, but not the *types* of bail it may order," and a "cash-only bond is a *type* of bail—not a condition or factor of bail—and therefore must fall under subsection (A) to be permissible." (Emphasis sic.) Consequently, the different types of bail referred to in Crim.R. 46(E) are those mentioned in Crim.R. 46(A). A contrary construction would not give due effect to Crim.R. 46(A).

{¶ 70} Second, the purpose of the 1998 amendment to Crim.R. 46 was to reorganize the rule in accordance with the constitutional amendment to Section 9, Article I. Staff Notes to 1998 Amendment to Crim.R. 46. The amendment reflected that a court determining bail could consider imposing conditions relating to both appearance and public safety. Instead, "the only apparent purpose in requiring a 'cash only' bond to the exclusion of the other forms provided in Crim.R. 46[ ] is to restrict the accused's access to a surety and, thus, to detain the accused in violation of Section 9, Article I." *Jones,* 66 Ohio St.3d at 118, 609 N.E.2d 541.

{¶ 71} Third, if we had intended to authorize cash-only bail when we amended Crim.R. 46, we would have so provided with appropriate language. See *Yakima v. Mollett* (2003), 115 Wash.App. 604, 610, 63 P.3d 177 (Washington rule of criminal procedure held not to authorize cash-only bail to the exclusion of a bond

because "[i]f the rule drafters intended to authorize 'cash only' bail, they could have easily set it out as a discrete condition of release").

{¶ 72} Fourth, and most important, even had Crim.R. 46 expressly permitted cash-only bail, it would have violated the sufficient-sureties clause of Section 9, Article I of the Ohio Constitution.

{¶ 73} Therefore, the amendment to Crim.R. 46 did not empower the trial court to order a cash-only bond for Smith.

## R.C. 2937.222

{¶ 74} The parties have also briefed the impact of the enactment of R.C. 2937.222 on the propriety of cash-only bail. As Smith and the Attorney General rightly assert, R.C. 2937.222 is inapplicable because it concerns only the procedure that must be followed before a trial court can deny bail to a person charged with a noncapital felony offense. The trial court did not attempt to follow that procedure in Smith's case, because it had decided to grant bail, and the state does not rely on R.C. 2937.222 to support its position. The state never proved the exception to the constitutional requirement of sufficient sureties, for a hearing under R.C. 2937.222 is required to do so.

{¶ 75} The constitutional amendment manifestly envisions this hearing by specifying that the "general assembly shall fix by law standards to determine whether a person who is charged with a felony where the proof is evident or the presumption great poses a substantial risk of serious physical harm to any person or to the community." Section 9, Article I, Ohio Constitution. The General Assembly complied by enacting R.C. 2937.222(A), which authorizes a hearing to make the required determination "[o]n the motion of the prosecuting attorney or on the judge's own motion." At this hearing, Smith would have been entitled to be represented by counsel and, if he was indigent, to have counsel appointed for him. Id. Smith would have had "an opportunity to testify, to present witnesses and other information, and to cross-examine witnesses who appear at the hearing." Id. The state would have had the "burden of proving that the proof is evident or the presumption great that the accused committed the offense with which the accused is charged, of proving that the accused poses a substantial risk of serious physical harm to any person or to the community, and of proving that no release conditions will reasonably assure the safety of that person and the community." Id. If the trial court then determined that the state had proved these elements by clear and convincing evidence, it could deny bail. R.C. 2937.222(B). In making that determination, the trial court would consider all available information regarding:

{¶ 76} "(1) The nature and circumstances of the offense charged, including whether the offense is an offense of violence or involves alcohol or a drug of abuse;

{¶ 77} "(2) The weight of the evidence against the accused;

{¶ 78} "(3) The history and characteristics of the accused, including, but not limited to, both of the following:

{¶ 79} "(a) The character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history of the accused;

{¶ 80} "(b) Whether, at the time of the current alleged offense or at the time of the arrest of the accused, the accused was on probation, parole, post-release control, or other release pending trial, sentencing, appeal, or completion of sentence for the commission of an offense under the laws of this state, another state, or the United States or under a municipal ordinance.

{¶ 81} "(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release."

{¶ 82} Although the matter is moot with respect to Smith himself, it appears from the record in this case that relevant evidence could have been introduced at an R.C. 2937.222 hearing. Smith was charged with several violent crimes, and it was undisputed that he shot four people. If convicted on retrial, Smith was facing a lengthy incarceration and would have spent the rest of his life in prison. At his initial trial, conviction on some of these charges had led to an aggregate prison term of 47 years to life. In summary, it appears that the trial court would not have abused its discretion in denying bail pending Smith's retrial, assuming it had held the proper statutory hearing.

## Conclusion

{¶ 83} Based on the foregoing, we hold that the issue of the propriety of cash-only bail, while moot as to Smith, is properly before us for consideration and that, in accordance with *Baker* and *Jones,* cash-only bail violates both Section 9, Article I of the Ohio Constitution and Crim.R. 46, as amended. Nevertheless, because Smith has now been convicted and sentenced, he is no longer entitled to the requested writ of habeas corpus. Therefore, we affirm the judgment of the court of appeals dismissing Smith's habeas corpus petition.

Judgment affirmed.

MOYER, C.J., PFEIFER and O'CONNOR, JJ., concur.

RESNICK, LUNDBERG STRATTON and O'DONNELL, JJ., concur in part and dissent in part.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 84} Although I agree with the majority's determination that this matter is not moot because it is capable of repetition yet evades review, I disagree with the conclusion that cash-only bail violates the Ohio Constitution. In my view, the plain language of the Constitution allows cash-only bonds. The majority's interpretation of the provisions at issue in this case improperly limits judicial discretion in fashioning appropriate types and amounts of bail. Therefore, I respectfully dissent.

{¶ 85} In my view, the primary purpose of bail under Section 9, Article I of the Ohio Constitution is to ensure the defendant's appearance and submission to the judgment of the court. See *Ex Parte Milburn* (1835), 34 U.S. (9 Pet.) 704, 710, 9 L.Ed. 280 ("A recognizance of bail, in a criminal case, is taken to secure the due attendance of the party accused"); *Reynolds v. United States* (1959), 80 S.Ct. 30, 32, 4 L.Ed.2d 46 (Douglas, Circuit Justice) ("The purpose of bail is to insure the defendant's appearance and submission to the judgment of the court"). I believe that with today's decision we are moving away from the intention of the framers of our Constitution.

{¶ 86} With a November 1997 vote, the people of the state of Ohio amended Section 9, Article I of the Ohio Constitution to read: "Where a person is charged with any offense for which the person may be incarcerated, the court may determine at any time the type, amount, and conditions of bail." As the majority notes, this court then modified Crim.R. 46 in light of this constitutional amendment to allow "[a] court, at any time, [to] order additional or different types, amounts, or conditions of bail." The General Assembly also responded to the amendment by enacting R.C. 2937.222, which details the procedure a judge must use in denying bail to a person charged with a noncapital offense, but remains silent as to permissible types or amounts of bail.

{¶ 87} The linchpin of the majority's analysis is that Section 9's "sufficient sureties" clause—"[a]ll persons shall be bailable by sufficient sureties"—provides that, with certain exceptions not at issue here, an accused has a right to be bailed out by " '[a] person who is primarily liable for the payment of another's debt or the performance of another's obligation,' " quoting the definition of "surety" in Black's Law Dictionary (8 Ed.2004) 1482. With "surety" defined in this manner, the majority concludes that the only way to give effect to Section 9's language permitting a court to "determine at any time the type, amount, and conditions of bail" is to prohibit a court from imposing any type of bail that does not allow a third party to assume the accused's bail obligation.

{¶ 88} In my view, the majority's use of Black's Law Dictionary to define the term "surety" too narrowly circumscribes the "sufficient sureties" clause, which, rather than specifically associating the bailing process with commercial bonding or some other secured transaction, merely provides the judge discretion in ensuring that the accused will appear for hearing. Indeed, both Section 9 and Crim.R. 46(E) demonstrate this principle by authorizing courts to determine "at any time" the type, amount, or conditions of bail.

{¶ 89} Moreover, the majority's construction of Section 9 renders superfluous the provisions in R.C. 2937.22 and Crim.R. 46 that allow a judge to impose a cash-only bond. See R.C. 2937.22(A), granting judges the authority to impose bail through "[t]he deposit of cash by the accused or by some other person for him," and Crim.R. 46, which characterizes "the deposit of cash, at the option of the defendant" as a permissible type of bail. In other words, the majority's view of the "sufficient sureties" clause necessarily prevents the operation of these sections, since a court is prohibited from imposing any type of bail that does not allow a third party to assume the accused's bail obligation. Nothing in the Ohio Constitution, the Ohio Rules of Criminal Procedure, or the Ohio Revised Code suggests, as the majority has concluded, that a judge may not set a cash-only bond.

{¶ 90} Recently, the Iowa Supreme Court reviewed this very issue, noting that the Iowa Constitution's "sufficient sureties" clause "was likely patterned on several state constitutions [including Ohio's] that included sufficient sureties clauses drafted *before* commercial bonding emerged." (Emphasis sic.) *State v. Briggs* (Iowa 2003), 666 N.W.2d 573, 583, fn. 6. After an exhaustive historical analysis, the Iowa Supreme Court concluded that personal, monetary, and property sureties were all more well-known methods of securing a bond when the Iowa Constitution was adopted—more than 40 years after the Ohio Constitution became effective in 1802. Id. at 583. Therefore, the *Briggs* court concluded, the core purpose of the sufficient-sureties clause "was to guarantee a bailable individual access to a surety of some form. However, * * * the framers did not intend that such access be unfettered or tied specifically to a commercial bonding process." Id. at 581–582. Accordingly, the *Briggs* court held that imposing a cash-only bond does not violate Iowa's sufficient sureties clause. Id. at 583.

{¶ 91} Likewise, with respect to our Constitution, drafted even earlier than Iowa's, it seems implausible that the framers intended Ohio's "sufficient sureties" clause to favor newly emerging methods of surety—commercial bonding and other secured transactions—to the exclusion of a traditional cash-only surety method. See id. at 583, where the *Briggs* court determined that "[w]hile it is possible that our framers had both traditional and commercialized surety in mind when drafting the sufficient sureties clause, we do not believe the traditional form

of surety had been fully eclipsed nor was the commercial form truly ascendant. At most, our framers had both forms in mind. To conclude the sufficient sureties clause extends an unfettered right to a commercial bail bondsmen [sic] contradicts the language of our constitution as well as historical reality." (Footnote omitted.)

{¶ 92} The primary purpose of bail is to ensure that the accused will be present at trial, and interpreting the "sufficient sureties" clause to provide for multiple bond forms satisfies this purpose. The majority's interpretation of the clause, therefore, both overlooks its historical context and erodes the courts' ability to ensure that the accused will return for trial.

{¶ 93} The language of our newly amended Constitution is clear. Section 9, Article I of the Ohio Constitution reads: "Where a person is charged with any offense for which the person may be incarcerated, the court may determine at any time the type, amount, and conditions of bail." Accordingly, because Section 9, Article I explicitly provides that "the court may determine at any time the type, amount, and conditions of bail," and because I believe that the founders intended the "sufficient sureties" clause to confer discretion upon courts in administering the bailing process, I would hold that the imposition of a cash-only bond does not violate the Ohio Constitution. And, since neither the Ohio Revised Code nor the Ohio Rules of Criminal Procedure prohibit cash-only bonds, I respectfully dissent and would reverse the judgment of the court of appeals.

RESNICK and O'DONNELL, JJ., concur in the foregoing opinion.

---

Squire, Sanders & Dempsey, L.L.P., and Pierre H. Bergeron, for appellant.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Judith Anton Lapp, Assistant Prosecuting Attorney, for appellee.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, Stephen P. Carney, Senior Deputy Solicitor, and Peter M. Thomas and Chelsea S. Rice, Assistant Solicitors, for Attorney General of Ohio.

Richard A. Magnus, urging reversal for amicus curiae, Ohio Association of Criminal Defense Lawyers.