OPINION
{¶ 1} Appellant, Acme Bonding Company, Inc., appeals the decision of the Youngstown Municipal Court refusing to remit part of a forfeited bond for a criminal defendant who failed to appear at multiple court appearances. After waiting five years to file a motion to remit the bond forfeiture, the director of the bonding company admitted at the hearing that he had no evidence to support his claim. The record does not explain why Appellant waited so long to challenge the forfeited bond. The trial court did not abuse its discretion, and the judgment is affirmed.
 {¶ 2} Since the bonding company is the Appellant in this case, the defendant will simply be referred to by his name, Joseph Holmes, or as defendant.
 {¶ 3} This appeal arises out of a misdemeanor traffic case from Youngstown Municipal Court. Joseph Holmes was cited for driving under suspension on April 3, 2000. Appellant, through its managing agent and corporate director James Horvath, posted a property bond for Holmes in the amount of $2,000. Holmes failed to appear for his pretrial hearing on April 20, 2000. The hearing was reset for May 12, 2000, and Holmes again failed to appear. An arrest warrant was issued. On May 15, 2000, the court sent Appellant a letter setting the date for a bond forfeiture hearing on June 16, 2000. The bond was forfeited on June 16, 2000.
 {¶ 4} On May 1, 2001, the court sent Appellant a letter setting a show cause hearing on June 12, 2001, allowing Appellant to explain why judgment should not be entered on the forfeited bond. Holmes once again failed to appear at the show cause hearing on June 12, 2001, and judgment was entered on the forfeited bond in the amount of $2,000. Also on June 12, 2001, the clerk of court sent Appellant another *Page 2 
letter stating that judgment had been entered on the forfeited bond, and that Appellant needed to pay the judgment by July 30, 2001, in order to continue acting as a surety.
 {¶ 5} On June 26, 2001, Appellant filed a motion to vacate the judgment entry that declared the bond to be forfeited. The motion was denied on August 6, 2001.
 {¶ 6} Holmes was finally arrested on August 4, 2001. Holmes entered a not guilty plea on August 6, 2001. Ace Bail Bond Company ("Ace Bail Bond") posted bond for the defendant at this time. Ace Bail Bond has no relationship to Appellant, but the events surrounding its bond are relevant to Appellant's argument on appeal. Holmes failed to appear for trial on August 24, 2001, and again on October 4, 2001. The court held a show cause hearing on November 26, 2001. Holmes failed to appear, and the bond from Ace Bail Bond was forfeited and judgment entered.
 {¶ 7} On December 13, 2001, Ace Bail Bond filed a "Motion for Remission of Penalty". The motion was granted on December 26, 2001, and the prior forfeiture was vacated.
 {¶ 8} On January 6, 2007, Appellant filed a motion for remission of forfeited bond. The court held a hearing on February 11, 2008. The court filed a two-page judgment entry denying the motion on February 12, 2008. This appeal followed on February 28, 2008.
 {¶ 9} Appellee has not filed a brief in this case. Pursuant to App. R. 18(C), this Court, "may accept the appellant's statement of the facts and issues as correct *Page 3 
and reverse the judgment if appellant's brief reasonably appears to sustain such action."
 ASSIGNMENT OF ERROR {¶ 10} "The trial court abused its discretion in denying the motion for remission of penalty filed by the surety for Joseph Holmes, James Horvath and Acme Bonding Co., Inc."
 {¶ 11} The purpose of bail is to ensure that a criminal defendant appears at all stages of the criminal proceedings. State v. Hughes
(1986), 27 Ohio St.3d 19, 20, 27 OBR 437, 501 N.E.2d 622; Smith v.Leis, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d, ¶ 34; Reynolds v.United States (1959), 80 S.Ct. 30, 32, 4 L.Ed.2d 46. Crim. R. 46(I) states: "Any person who fails to appear before any court as required is subject to the punishment provided by the law, and any bail given for the person's release may be forfeited."
 {¶ 12} R.C. 2937.39 allows a surety to request the court to remit some or all of a forfeited bail bond:
 {¶ 13} "After judgment has been rendered against surety or after securities sold or cash bail applied, the court or magistrate, on the appearance, surrender, or rearrest of the accused on the charge, may remit all or such portion of the penalty as it deems just and in the case of previous application and transfer of cash or proceeds, the magistrate or clerk may deduct an amount equal to the amount so transferred from subsequent payments to the agencies receiving such proceeds of *Page 4 
forfeiture until the amount is recouped for the benefit of the person or persons entitled thereto under order or remission."
 {¶ 14} R.C. 2937.39 does not set any particular time frame or deadline for filing a motion for remission of a forfeited bond.
 {¶ 15} A trial court's decision regarding the remission of a forfeited bond is reviewed for abuse of discretion. State v. American Bail BondAgency (1998), 129 Ohio App.3d 708, 713, 719 N.E.2d 13. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980), 62 Ohio St.2d 151, 157,16 O.O.3d 169, 404 N.E.2d 144.
 {¶ 16} We have previously dealt with the remission of bail bonds inState v. Smith, 7th Dist. No. 05 JE 49, 2006-Ohio-4614. InSmith, we determined that a denial of a motion for remission of part or all of a bail bond is a final appealable order.
 {¶ 17} Smith identified six factors for the trial court to consider in a motion to remit a bond:
 {¶ 18} "1. The circumstances surrounding the subsequent appearance by the defendant, including the timing, and whether her reappearance was voluntary;
 {¶ 19} "2. The reasons for defendant's failure to appear * * *;
 {¶ 20} "3. The inconvenience, expense, delay and any other prejudice to the prosecution;
 {¶ 21} "4. Whether the [sureties were] instrumental in securing the appearance of the defendant; *Page 5 
 {¶ 22} "5. Any mitigating circumstances; and
 {¶ 23} "6. Whether justice requires that the entire amount of the bail remain forfeited." Id. at ¶ 37-42, citing American Bail BondAgency, supra.
 {¶ 24} Smith also held that: "`when considering a request for post-appearance bond remission pursuant to R.C. 2937.39, a trial court should balance the reappearance of the accused and the efforts expended by the surety to effectuate the reappearance against the inconvenience, expense, and delay suffered by the state and any other factors the court finds relevant.'" Id. at ¶ 44, quoting State v. Jackson,153 Ohio App.3d 520, 2003-Ohio-2213, 795 N.E.2d 57, at ¶ 9.
 {¶ 25} Appellant's first argument is that he did not receive notice of the original forfeiture of the bond in May of 2000, despite the fact that a copy the letter that served as his notice is part of the record. Appellant argued that he moved his business in 1999, and that the court sent the notice to the old address. Appellant contends that the court could not forfeit the bond without sending proper notice to the correct address of the bonding company.
 {¶ 26} R.C. 2937.35 provides for either immediate forfeiture of bail when the accused fails to appear, or allows the court to give notice of a subsequent hearing in which the accused must appear or else have the bail forfeited:
 {¶ 27} "Upon the failure of the accused or witness to appear in accordance with its terms the bail may in open court be adjudged forfeit, in whole or in part by the court or magistrate before whom he is to appear. But such court or magistrate may, in its discretion, continue the cause to a later date certain, giving notice of such date *Page 6 
to him and the bail depositor or sureties, and adjudge the bail forfeit upon failure to appear at such later date."
 {¶ 28} Assuming arguendo, and despite clear evidence from the record to the contrary, that Appellant did not receive notice of the initial forfeiture hearing in June of 2000, the record still does not indicate an abuse of discretion in dismissing the motion to remit all or part of the bond. Appellant's argument only addresses a hearing that took place in June, 2000, when in fact, the bond was not actually forfeited until almost one year later, after a new hearing was set and new notifications were sent. Appellant clearly had notice that bond was in peril of forfeit when the court began proceedings to enter judgment on the forfeiture in May of 2001. In essence, the court was giving Appellant a second chance to produce the accused or risk having the forfeiture reduced to judgment and collected by the court. Appellant failed to produce the defendant at the June 12, 2001, hearing, and judgment was subsequently entered.
 {¶ 29} After the court entered judgment on the bond, Appellant filed a motion to vacate the forfeiture on June 26, 2001. Clearly Appellant had notice of the proceedings at least by this date, because Appellant filed a motion to vacate. Once again, the accused was still at large and did not appear, and the motion to vacate was denied. Appellant took no further action for almost six more years, until January 6, 2007. The trial court's judgment entry denying remission of the forfeited bond makes it very clear that the decision was based in large part on the "lateness of filing *Page 7 
the motion" for remission of the forfeited bond as, "another indication of the lax practices of the surety." (2/12/08 J.E., p. 2.)
 {¶ 30} There are no specific cases discussing how late is too late for a surety to file a motion for remission of forfeiture of bond. R.C. 2937.39 contemplates that the motion will be filed on, "the appearance, surrender, or rearrest of the accused on the charge." This would seem to indicate a time frame before final judgment of conviction and sentence are rendered. R.C. 2937.39 gives the court broad discretion to determine what is just when a surety requests a remission of a bond forfeiture, including the discretion to reject a request for remission filed five years after, "the appearance, surrender, or rearrest of the accused."
 {¶ 31} Mr. Horvath did not help his cause when he testified at the hearing in February of 2008 that he had no records from 2001 to establish his case or to explain why he filed his motion for remission of forfeiture so late:
 {¶ 32} "I was explaining to the attorney earlier today being that the case is so old, it was a property case also and it wasn't written through the surety insurance company. It was a property case and those were kept different and we have moved these since then. I don't have any of those property files because we no longer write property bonds. We haven't written any since 2001." (Tr., pp. 16-17.)
 {¶ 33} Horvath testified that he made no effort to insure that Holmes appeared at his scheduled hearings except for telling Holmes' brother-in-law about the hearings. The court asked Horvath why he waited seven years to file for a remission of the forfeited bond. Horvath answered: *Page 8 
 {¶ 34} "A I think we filed a remission hearing in August according to the records here, motion to vacate judgment filed by Acme Bonding Company August 6th, 2001.
 {¶ 35} "Q [from the Court] Well, I am talking about this motion right here that we are here on filed in June of `07, the motion that brings us here today?
 {¶ 36} "A Right.
 {¶ 37} "Q Why did you wait seven years before filing that motion?
 {¶ 38} "A Still trying to get back into the Courts to be allowed to write bonds here.
 {¶ 39} "Q Why did you wait seven years before filing the motion?
 {¶ 40} "A We didn't wait. We have been pursuing this through legal recourse but haven't gotten anyone until I got in contact with Attorney Broyles who said he files, there is a way he can get this brought in front of the Court again so we can get a ruling on it.
 {¶ 41} "THE COURT: Any further questions, Attorney Broyles?
 {¶ 42} "MR. BROYES: No, Your Honor." (Tr., p. 18.)
 {¶ 43} Horvath's answer that he was supposedly pursuing legal means to challenge the judgment on the forfeited bond but could not do so until 2008 is not supported by the record. First, the obvious step for Appellant to take was to file a motion to remit the forfeiture under R.C. 2937.39 as soon as possible after Holmes was apprehended. The record in the case itself should have revealed this to Appellant, since Ace Bail Bond filed such a motion soon after its $5,000 bond was *Page 9 
forfeited. Furthermore, Ace Bail Bond was successful in its motion, and the forfeiture was completely vacated on December 26, 2001. The actions taken by Ace Bail Bond should have put Appellant's counsel on notice as to the proper procedure for remitting a forfeited bond.
 {¶ 44} Further, the record fully supports the trial court's other reasons for denying the remission of the forfeited bond. This was Appellant's motion and it carried the burden of proof. The court noted that Mr. Horvath had no records of the events of this case, and his own testimony bears this out. Horvath also testified that he did nothing to insure that Holmes would appear in court except for telling Holmes' brother-in-law about the court dates. Horvath could not remember what information, if any, he gave to two bounty hunters to help find Holmes. Horvath did not provide any information to the police to assist in finding Holmes, and he testified that it was a mere coincidence that Holmes was arrested on August 4, 2001. (Tr., p. 7.) Thus, there is little if anything in the record to act as mitigating evidence to convince the court to remit any part of the forfeiture.
 {¶ 45} The court further relied on a public policy consideration in refusing to remit the forfeited bond. The trial court reasoned that bail bond companies should be discouraged from posting bonds without first engaging in some background investigation of the defendant. This Court, in Smith, specifically approved the trial court's consideration of a surety's screening practices of criminal defendants as a factor in refusing to remit part of a forfeited bond: "the only incentive [the trial court] could give this company to make better choices in bonding was not to remit the bond *Page 10 
in this case. The trial court did not abuse its discretion in considering this factor; the factor is relevant to its decision." Id. at ¶ 57. This appears to be the same type of consideration undertaken by the trial court in the instant case. The court noted Appellant's lack of recordkeeping, lack of research into Holmes' background, and lax attitude toward insuring that Holmes would appear in court.
 {¶ 46} Appellant argues that the state did not offer any evidence at the remission hearing, and thus, that the motion for remission should have been granted. Again, since the burden was on Appellant to prove that the court should remit part of the forfeited bond, the state was not required to produce any evidence. "[T]he surety * * * bears the burden of proof on the matter of remission and its amount, [and] the surety must present evidence relevant to the costs and inconvenience incurred." State v. Thornton, 2nd Dist. No. 20963, 2006-Ohio-786, ¶ 18. Obviously, the state takes a risk in not presenting evidence, as it may deprive the trial court from considering the state's perspective on the factors the court considers, especially regarding any prejudice or expense that the state suffered due to the defendant's failure to appear. Nevertheless, the failure of the state to present evidence is not a reason in and of itself for remitting a forfeited bond.
 {¶ 47} Although Appellee did not respond to this appeal, we cannot find any abuse of discretion in this case where Appellant delayed filing his motion for remission of forfeiture for several years; where Mr. Horvath admitted he could not remember the details of what had occurred and had no records; and where there was *Page 11 
no indication that Appellant ever assisted the police in apprehending the defendant. The judgment of the trial court is affirmed.
Vukovich, P.J., concurs.
DeGenaro, J., concurs. *Page 1