OPINION
{¶ 1} Appellant, Acme Bonding Co., Inc., appeals the decision of the Youngstown Municipal Court refusing to remit part of a forfeited bond for a criminal defendant who failed to appear for a hearing, and then failed to appear at the bond forfeiture hearing. The record reflects that Appellant waited six years to file its motion to remit part of the forfeited bond, and then failed to substantiate any specific reason for supporting the motion to remit at the evidentiary hearing. The trial court did not abuse its discretion, and the judgment is affirmed.
 {¶ 2} Since the bonding company is the Appellant in this case, the defendant will simply be referred to by his name, Charles Scott, or as defendant.
 {¶ 3} This appeal involves two bonds posted by Appellant for two separate counts in one criminal case from Youngstown Municipal Court. The defendant was charged on January 22, 2001, with one count of possession of marijuana, a first degree misdemeanor, and one count of possession of Vicodin, a third degree misdemeanor. Appellant posted two property bonds of $1,500 each for the defendant on January 22, 2001. Scott requested a continuance to March 1, 2001, but failed to appear for the continued hearing. On May 1, 2001, the court sent Appellant a show cause order and notice of hearing on June 12, 2001, to determine whether the bonds should be forfeited and judgment entered. Appellant failed to produce the defendant at the hearing, and the bonds were forfeited and judgment entered on June 12, 2001.
 {¶ 4} The defendant was arrested on July 26, 2001, and appeared in court that day. He subsequently entered into a plea agreement. On August 28, 2001, *Page 2 
Scott pleaded no contest to one count of abuse of Vicodin, and the first count in the complaint was dismissed. He was sentenced to 60 days in jail, 27 days suspended, and credit given for 33 days, along with a $50 fine and court costs.
 {¶ 5} Almost six years later, on June 6, 2007, Appellant filed a motion for remission of the forfeited bond. A hearing was set for February 11, 2008. The motion was denied on February 12, 2008, and this appeal followed on February 28, 2008.
 {¶ 6} Appellee has not filed a brief in this case. Pursuant to App. R. 18(C), we, "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."
 ASSIGNMENT OF ERROR {¶ 7} "The trial court abused its discretion in denying the motion for remission of penalty filed by James Horvath, the surety for Charles Scott."
 {¶ 8} The purpose of bail is to ensure that a criminal defendant appears at all stages of the criminal proceedings. State v. Hughes
(1986), 27 Ohio St.3d 19, 20, 27 OBR 437, 501 N.E.2d 622; Smith v.Leis, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d, ¶ 34; Reynolds v.United States (1959), 80 S.Ct. 30, 32, 4 L.Ed.2d 46. Crim. R. 46(I) states: "Any person who fails to appear before any court as required is subject to the punishment provided by the law, and any bail given for the person's release may be forfeited."
 {¶ 9} R.C. 2937.39 allows a surety to request the court to remit some or all of a forfeited bond: *Page 3 
 {¶ 10} "After judgment has been rendered against surety or after securities sold or cash bail applied, the court or magistrate, on the appearance, surrender, or rearrest of the accused on the charge, may remit all or such portion of the penalty as it deems just and in the case of previous application and transfer of cash or proceeds, the magistrate or clerk may deduct an amount equal to the amount so transferred from subsequent payments to the agencies receiving such proceeds of forfeiture until the amount is recouped for the benefit of the person or persons entitled thereto under order or remission."
 {¶ 11} A trial court's decision regarding the remission of a forfeited bond is reviewed for abuse of discretion. State v. American Bail BondAgency (1998), 129 Ohio App.3d 708, 713, 719 N.E.2d 13. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. State v. Adams (1980), 62 Ohio St.2d 151, 157,16 O.O.3d 169, 404 N.E.2d 144.
 {¶ 12} We have previously dealt with the remission of bail bonds inState v. Smith, 7th Dist. No. 05 JE 49, 2006-Ohio-4614. InSmith, we determined that a denial of a motion for remission of part or all of a bail bond is a final appealable order. Smith identified six factors for the trial court to consider in a motion to remit a bond:
 {¶ 13} "1. The circumstances surrounding the subsequent appearance by the defendant, including the timing, and whether her reappearance was voluntary;
 {¶ 14} "2. The reasons for defendant's failure to appear * * *; *Page 4 
 {¶ 15} "3. The inconvenience, expense, delay and any other prejudice to the prosecution;
 {¶ 16} "4. Whether the [sureties were] instrumental in securing the appearance of the defendant;
 {¶ 17} "5. Any mitigating circumstances; and
 {¶ 18} "6. Whether justice requires that the entire amount of the bail remain forfeited." Id. at ¶ 37-42, citing State v. American Bail BondAgency, supra.
 {¶ 19} Smith also held that: "`when considering a request for post-appearance bond remission pursuant to R.C. 2937.39, a trial court should balance the reappearance of the accused and the efforts expended by the surety to effectuate the reappearance against the inconvenience, expense, and delay suffered by the state and any other factors the court finds relevant.'" Id. at ¶ 44, quoting State v. Jackson,153 Ohio App.3d 520, 2003-Ohio-2213, 795 N.E.2d 57, at ¶ 9.
 {¶ 20} Appellant argues that the court misconstrued the testimony of James Horvath, the managing director of Acme Bonding Co., Inc. Horvath testified that he posted the bond after talking with the defendant's uncle, whom Horvath had known for 15 to 20 years. Horvath gathered some basic contact information from the uncle and then issued the bonds. Scott failed to appear on March 1, 2001, and the court notified Appellant that a show cause hearing would take place on June 12, 2001. Horvath testified that the judge gave him until July 31, 2001, to produce the defendant or else risk forfeiting the bonds. This testimony cannot be reconciled with other parts of the record. The record shows that judgment on the bonds was entered *Page 5 
on June 12, 2001. On that same day, the court sent Appellant a bill for $3,000. Then, on July 25, 2001, the court sent Appellant a letter stating that the bill had not been paid and that he would no longer be permitted to act as a surety with the court unless the bill was paid by August 1, 2001. Perhaps Horvath was confused by this letter, since he apparently believed that he did not need to pay the overdue bill if he produced the defendant prior to August 1, 2001. Regardless of Appellant's interpretation of this letter, the record is clear that Appellant failed to produce the defendant at a hearing on June 12, 2001, and that the bonds were forfeited and judgment entered on that day.
 {¶ 21} Appellant also contends that the court misconstrued Horvath's testimony regarding information he allegedly forwarded to the Mahoning Valley Violent Crimes Task Force. The record indicates that Horvath told a member of the task force that he was looking for Scott and might have an address soon. (Tr., p. 21.) It is not clear when Horvath relayed this information or exactly what information he might have given the task force. Horvath also testified that he contacted "two guys" to help find Scott. He could not remember what information he gave these "two guys" and he had no copies of any information he may have given them. (Tr., p. 27.) Horvath also testified that he could not remember any specific address information that he might have given to the task force. (Tr., p. 26.) The task force apprehended Scott on July 26, 2001. There is no indication in the record that Horvath contributed in any way to the arrest. *Page 6 
 {¶ 22} The trial court did not misconstrue this evidence. The court noted that Horvath passed on information about the defendant to the task force, but the court was also aware that Horvath could not remember any details about that information. The court noted that Horvath did not follow up with the "bounty hunters," and Horvath specifically testified that he did not receive status reports from his bounty hunters. Horvath did not know when Scott was arrested, or under what circumstances the arrest took place. Other than some very vague testimony about an unspecified address and asking "two guys" to help find the defendant, Horvath did not provide any information to the court to support the conclusion that he was instrumental in locating and apprehending the defendant. Furthermore, Horvath's testimony was geared towards trying to prove that he helped find the defendant after June 12, 2001, even though the bond had already been forfeited and judgment entered on that date. Horvath did not show that he made any attempts to find the defendant between the time he received notice of the defendant's non-appearance at court and the date set for the show cause hearing. There was no abuse of discretion in how the court construed the testimony of Horvath because his testimony did not establish any reasons for remitting the forfeited bonds.
 {¶ 23} Appellant also contends that the court could not use the delay in filing the motion for remission of forfeiture as a factor in denying the motion. There are no specific cases discussing how late is too late for a surety to file a motion for remission of forfeiture of bond. R.C. 2937.29 contemplates that the motion will be filed on, "the appearance, surrender, or rearrest of the accused on the charge". Obviously, the *Page 7 
defendant was arrested and his criminal conviction and sentence were completed long before Appellant filed the motion for remission. Scott was convicted and sentenced on August 28, 2001. The motion for remission of forfeiture was filed on June 6, 2007, almost six years later. Horvath gave no explanation whatsoever as to why he waited so long to file the motion. Under these circumstances, a trial court does not abuse its discretion in refusing to remit a forfeited bond due to the lateness in filing the motion to remit.
 {¶ 24} Appellant further argues that the court could not find a compelling public interest in refusing to remit any portion of the bonds. The trial court reasoned that bail bond companies should be discouraged from posting bonds without first engaging in some background investigation of the defendant. This Court, in Smith, specifically approved of the trial court's consideration of a surety's screening practices of criminal defendants as a factor in refusing to remit part of a forfeited bond: "the only incentive [the trial court] could give this company to make better choices in bonding was not to remit the bond in this case. The trial court did not abuse its discretion in considering this factor; the factor is relevant to its decision." Id. at ¶ 57. This appears to be the same type of consideration that the trial court applied in the instant case when it stated, "[t]he Court also considered the compelling public interest in discouraging bail bond companies from posting bond without adequate investigation". (2/12/08 J.E., p. 2.)
 {¶ 25} Although Appellee did not respond to this appeal, we cannot find any abuse of discretion in this case when Appellant waited almost six years to file a *Page 8 
motion to remit the forfeited bonds, and then failed to produce any specific evidence that would have supported a remission of the bonds. The judgment of the trial court is affirmed.
Vukovich, P.J., concurs.
DeGenaro, J., concurs. *Page 1