[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] The indictment listed the defendant-appellant's name as "Gary" rather than "Garey."
 DECISION.
{¶ 1} Defendant-appellant Garey Smith shot Jimmie Gordon to death. Smith also shot and seriously wounded Jeffrey King, Steven Franklin, and Andre Ridley. As a result, Smith was indicted for aggravated murder with a death-penalty specification, three counts of attempted murder, six counts of felonious assault, all with firearm specifications, and one count of having a weapon while under a disability.
 {¶ 2} At trial, Smith testified that he had accidentally shot King, and that he had shot the other three victims in self-defense. The jury found Smith guilty of murder, a lesser offense, two counts of attempted murder, six counts of felonious assault, with the accompanying firearm specifications, and having a weapon while under a disability. Smith was acquitted of the third count of attempted murder. The trial court sentenced Smith to incarceration on each count for an aggregate term of forty-seven years to life. Smith now appeals.
 {¶ 3} On appeal, Smith advances four assignments of error: (1) the trial court erred by denying him the right to represent himself at trial; (2) the trial court erred by requiring him to wear a stun belt during the trial; (3) the trial court erred by permitting prosecutorial misconduct during closing argument; and (4) he was denied the effective assistance of trial counsel. Because we sustain the first assignment of error, we reverse the judgment of the trial court and remand this case for a new trial.
 {¶ 4} In his first assignment of error, Smith argues that the trial court erred by not allowing him to represent himself at trial, thereby violating his rights under the Sixth and Fourteenth Amendments to the United States Constitution. We agree.
 {¶ 5} Smith was arraigned on the charges in this case on May 29, 2001. At that time, two lawyers were appointed to represent him, one as lead counsel and one as co-counsel. Two weeks later, Smith became dissatisfied with lead counsel and filed a motion to replace him. The trial court appointed a second attorney to act as lead counsel. Within three months, the second lead counsel moved to withdraw, and Smith moved to have him removed from the case. Again, the trial court granted the motions and appointed a third attorney to act as lead counsel. Co-counsel remained the same.
 {¶ 6} Within five months of the court's appointment of a third attorney to act as lead counsel, on March 6, 2002, Smith filed motions "to excuse lead counsel and act pro se" and to retain co-counsel. At the hearing on the motions, Smith asked to be allowed to represent himself with the assistance of co-counsel. Smith stated to the court, "I obviously know that I have no constitutional right to co-counsel the way I'm asking them to participate in this case, but I was thinking like, in all fairness, and, you know, considering the gravity in this situation, that the Court, you know, maybe may look at it and say it would be beneficial to help things move along. Also, like I said in my motion, I thought it would be inappropriate for me to cross-examine the police officers and cross-examine the victims in this case. I thought it would be better if I had a trained lawyer to do that for me and not just act as shadow counsel does. Also at this time I intend to take the stand, and, you know, witness on my own behalf, and I thought it would be good if [co-counsel] can do my direct examination."
 {¶ 7} We note that at that point in time Smith's request was for a "hybrid" type of representation in which he would be enabled to act as co-counsel with an attorney. But "the United States and Ohio Constitutions do not provide for such an arrangement."[2] In fact, a defendant "has no right to a `hybrid' form of representation wherein he is represented by counsel, but also acts simultaneously as his own counsel."[3]
 {¶ 8} But by the end of the hearing, Smith stated that he no longer wanted to have counsel: "And now, I'm willing to waive my right to an attorney — and I want this on the record — only because I have no other recourse. I mean, I don't know they're doing anything in my favor. * * * Like I said, just to sum that up, Your Honor, I don't have to be a lawyer. The constitution guarantees me the right to come up here and defend myself." The court then concluded that Smith's request had become one to represent himself: "Well, the record is clear that the defendant is requesting that he be permitted to act in his own behalf pro se and not simply as co-counsel * * *." The record therefore indicated that, by the end of the hearing on his motions, Smith had properly invoked his right to represent himself without counsel.
 {¶ 9} A problem in this case evolved because the trial court believed that it could not allow Smith to proceed to defend himself because it was bound by Sup.R. 20, which governs the appointment of counsel for indigent defendants in capital cases. The rule provides that "[i]f the defendant is entitled to the appointment of counsel, the court shall appoint two attorneys certified pursuant to this rule." So the court indicated that it would allow Smith to represent himself, but that it would also require both lead counsel and co-counsel to remain on the case "and [to] actively participate." This arrangement soon proved difficult for the defense team.
 {¶ 10} On June 5, 2002, just over a month before the scheduled trial date, defense counsel filed a motion entitled "Motion to Clarify Defendant's Request to Proceed Pro Se and Court's Ruling Thereon (Ex Parte Hearing Requested)." On June 13, 2002, at a hearing on the motion, defense counsel expressed to the court their confusion about whether the court's order meant that Smith was actually going to be representing himself and whether Smith would be in control of his own defense. Counsel told the court that if the court ordered them to act as standby counsel, they might file motions to withdraw as counsel because they could not conduct a defense jointly with Smith.
 {¶ 11} At the same hearing, Smith told the court, "I'd like to just say that the last time when you ruled on my original motion to defend myself, I asked for clarification at that point, and you said that I will be able to take an active part in my case as an attorney to represent myself. And then you said that you were going to leave the counsel on, and at that point, realizing that you've been on the bench for 30 or 40 years, I guessed maybe you were doing what you thought was best. I talked it over with other people. They feel like maybe this isn't a bad idea, so I said okay, as long as I get to take an active part in my case, I'm okay with that." The court then said, "Mr. Smith, so you want — it sounds like you're now willing to withdraw that request that you made to serve as your own counsel." And Smith responded, "No, sir."
 {¶ 12} The court told Smith, "Since this is a capital case in which the possibility of the death penalty is involved, I will not let you proceed on your own. I'm going to require the lawyers to proceed first, and your active participation then will be after they've done what they believe is appropriate. I'll give you an opportunity to state on the record what you want to do — and if I deem it appropriate under the circumstances at that time, I will permit you to do additional work." The court told Smith that during the trial it would require defense counsel to proceed first, and "[t]hen I'm going to permit you, if you want to do something different, you'll have to ask what it is and let me know before we do it."
 {¶ 13} "THE DEFENDANT: If I have to ask permission to do things — if I have to ask your permission in order to do something in my case * * * That's not what I want. That is absolutely not what I want.
 {¶ 14} "THE COURT: That's what I'm going to be ordering.
 {¶ 15} "THE DEFENDANT: Well, I want to defend myself.
 {¶ 16} "THE COURT: I'm not going to permit you to do that, sir. You have to have competent counsel. The court is required by law to provide competent counsel. The court has done that. You're now on your third lead * * * defense counsel.
 {¶ 17} "THE DEFENDANT: Your Honor — .
 {¶ 18} "THE COURT: I'm not going to permit you to do this on your own.
 {¶ 19} "THE DEFENDANT: Your Honor, under the constitution, I have a right to do that.
 {¶ 20} "THE COURT: You have made your point and the record is clear on that.
 {¶ 21} "THE DEFENDANT: I take total exception to that, Your Honor.
 {¶ 22} "THE COURT: You have a right to do that, sir. And anything else you want the record to reflect?
 {¶ 23} "[LEAD DEFENSE COUNSEL]: Judge, just to make this perfectly clear, and I do cite the Supreme Court decision in our motion to clarify, my understanding is that Ohio has indicated that if we are counsel of record in this matter that the choice of tactics is our decision in this case.
 {¶ 24} "THE COURT: That's correct. * * * At every step of the way during this trial, the attorneys will do their job first, Mr. Smith, and then, if you want to do something additionally, you'll place on record what it is that you want to do and the Court will decide whether or not to permit you to do it.
* * *
 {¶ 25} "THE DEFENDANT: Your Honor, I just want the record to reflect that I am totally against that."
 {¶ 26} The court then undertook an extraordinary step by conducting a discussion with Smith and defense counsel outside the presence of the prosecution. Defense counsel indicated that they were in strong disagreement with Smith about the tactical presentation of the case. Smith was equivocal about whether he truly wanted to represent himself: "Like from what I asked in my original motion to go pro se, and I need someone to ask the questions because I thought it would be inappropriate for me to question police officers and the alleged victims in this case. And so I said it would be good — excuse me — it would be good if an attorney did that because, you know, they know the case. I know the case. And I know this. I want to have a chance to talk with the jury."
 {¶ 27} Lead defense counsel then indicated to the court that "unless [Smith] is found to be incompetent, he has the constitutional right to represent himself, perhaps with assistance by counsel to advise him, but to conduct the defense himself, which would then give him the right to make those tactical decisions that he feels should be in his purview. So at this time, there having been no finding that Mr. Smith is incompetent, we, as counsel, I think have to at least advance his right to represent himself at this point in time. * * * It has been our advice to Mr. Smith all along that he not represent himself in this kind of a case, that he needs experienced counsel and someone who knows how to handle the case. However, he does have the right to do so if he intends to stand on that right and he has been somewhat ambiguous on whether he was going to stand on that right or not, but I think at this point in time, we have a record where he indicated that he wishes to do so."
 {¶ 28} Following a discussion among the court, defense counsel, and Smith, lead defense counsel indicated, "[W]e've asked Mr. Smith whether, given the parameters of the court's ruling, he wishes us to withdraw as counsel because we do not want to interfere in any fashion with his right to represent himself and he wishes to assert and preserve that right for the record. And with that understanding that we will follow the parameters of the court's ruling in this matter and without him waiving his right to self representation in any fashion, he has indicated that he does not wish us to withdraw as counsel * * *." Smith agreed.
 {¶ 29} The trial in this case was scheduled to begin on July 8, 2002. On June 25, 2002, Smith filed a document entitled "Notice of Motion and Motion to Proceed Pro-Se," in which he requested that he be allowed to represent himself. Smith stated, "Sir, my life and liberty are at stake, so this motion is written with a firm resolve. If you believe that I have vacilated [sic] earlier[,] let me state unequivocally that I want to defend myself. While it is true that this isn't the best case senario [sic] for me, it is my right."
 {¶ 30} On July 2, 2002, the court held a hearing on Smith's motion. The court reiterated its ruling that defense counsel would proceed first, and that Smith would be allowed to participate. Then the following exchange took place:
 {¶ 31} "THE DEFENDANT: Well, Your Honor, in closing, I just want to make it clear that I think — I take exception to your ruling on my proceeding pro se, and I just —
 {¶ 32} "THE COURT: That's fine.
 {¶ 33} "THE DEFENDANT: — wanted to let you know that I shouldn't have to go any further than that, to let the court know that you can't force an attorney on somebody. * * * I just, Your Honor, just for the record, I just want to say that from what I read in the constitution, what it said is that once I waive my right to an attorney, the State is no longer under an obligation to supply me with any standby counsel in any capacity. And actually I would like to do it on my own, and in your discretion, you would allow me to have a standby counsel and that's not against the law.
* * *
 {¶ 34} "THE COURT: Mr. Smith, you're going to be permitted to participate, if you want to, and if you feel that [defense counsel] do something during the trial that interferes with what you plan to present, there is going to have to be a record created in whatever manner it is deemed appropriate. I'm not going to simply have counsel stand by and simply tell you what you should and shouldn't do."
 {¶ 35} The following day, at another hearing before the court, Smith told the court, "I don't know how many times I have to tell the court in order to preserve my rights. I'm not waiving my Sixth Amendment right to separate representation. * * * I don't know what legal precedent you're going by to force [lead defense counsel] on me. I just didn't want my silence to acquiesce that [sic], and I'm going through the procedures under protest."
 {¶ 36} The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to defend himself without counsel where the defendant voluntarily, knowingly and intelligently elects to do so.[4] In Faretta v. California,[5] the United States Supreme Court explained, "Although not stated in the [Sixth] Amendment in so many words, the right to self-representation — to make one's own defense personally — is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails. The counsel provision supplements this design. It speaks of the `assistance' of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplates that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant — not an organ of the State interposed between an unwilling defendant and his right to defend himself personally. To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists."[6]
 {¶ 37} The defendant must assert his right to self-representation in an unequivocal and timely manner, or it is waived.[7] If a trial court denies a defendant the right of self-representation when that right is properly invoked, the denial is per se reversible error.[8]
 {¶ 38} To establish an effective waiver of a defendant's right to counsel, "the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right."[9] We have held that a trial court errs when it allows a defendant "to waive his right to be represented by counsel without first making a thorough inquiry into whether the defendant understood the magnitude of the undertaking and the hazards inherent in self-representation."[10]
 {¶ 39} We have further explained that a trial court "should candidly and thoroughly discuss with the defendant `the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.'"[11] "Whether the waiver is knowing and voluntary must be decided on a case-by-case basis."[12]
 {¶ 40} While, early on in this case, Smith's request for self-representation had been uncertain, the record demonstrates that, before trial, Smith had unequivocally invoked his constitutional right to represent himself. Despite Smith's requests to proceed without counsel, the trial court apparently believed that it was bound by the Rules of Superintendence for the Courts of Ohio to require counsel to participate actively in Smith's defense.
 {¶ 41} In this case, the trial court could have appointed standby counsel to assist Smith, even if Smith had objected, "to relieve the judge of the need to explain and enforce basic rules of courtroom protocol or to assist the defendant in overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals."[13] But the role of standby counsel is wholly different from the role of regular trial counsel: "First, the pro se
defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the Faretta right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the Faretta right is eroded.
 {¶ 42} "Second, participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself. The defendant's appearance in the status of one conducting his own defense is important in a criminal trial, since the right to appear pro se exists to affirm the accused's individual dignity and autonomy. * * * From the jury's perspective, the message conveyed by the defense may depend as much on the messenger as on the message itself. From the defendant's own point of view, the right to appear pro se can lose much of its importance if only the lawyers in the courtroom know that the right is being exercised."[14]
 {¶ 43} In this case, the trial court's order that defense counsel remain on the case and actively participate went well beyond an appointment of standby counsel and undermined Smith's right to represent himself. The Ohio Supreme Court's Rules of Superintendence could not trump Smith's constitutional right to represent himself.[15] Contrary to the trial court's assumption, it made no difference that Smith faced the death penalty upon conviction. In State v. Taylor,[16] the Ohio Supreme Court held that the trial court did not err by allowing a defendant who faced the death penalty upon conviction to represent himself at trial, where the defendant's waiver of counsel was made knowingly and voluntarily.
 {¶ 44} As the Eighth Appellate District recognized in State v.Watson,[17] "the trial court was understandably and appropriately concerned to provide the defendant with effective representation by counsel at all stages of the proceedings. We acknowledge and approve the trial judge's intent to protect the defendant's fundamental constitutional right to counsel. We also acknowledge the apparent inconsistency in recognizing a right to counsel and a right to self-representation and the careful course the courts must steer among those rights. All this having been said, however, once the appellant clearly and unequivocally informed the trial court that he wished to represent himself, the court was obligated to determine whether the defendant knowingly, voluntarily and intelligently waived his right to counsel. The court's failure to inquire whether appellant knowingly, intelligently and voluntarily waived his right to counsel violated appellant's Sixth Amendment right to defend himself."
 {¶ 45} In this case, Smith's requests to represent himself were ultimately both timely and unequivocal.[18] Following Smith's requests, the trial court should have made a sufficient inquiry into whether Smith fully understood and relinquished his right to be represented by counsel. While the court acknowledged that Smith had a right to represent himself and tried to accommodate that right, the court believed that Sup.R. 20 mandated defense counsel. As a result, the trial effectively denied Smith's constitutional right to defend himself. The denial was per se reversible error.[19] Accordingly, we sustain the first assignment of error, reverse the trial court's judgment, and remand this case for a new trial.
 {¶ 46} Although not central to the disposition of this appeal, we feel compelled to comment on Smith's allegations of prosecutorial misconduct during closing argument. We agree that the prosecutor's comments on the veracity of Smith, his admitted attempts to bait Smith into losing his temper, and his comments on facts not in evidence were improper. The prosecutor's actions under other circumstances may have provided a basis for reversal and the order of a new trial, but given our disposition of the first assignment of error, this issue has been rendered moot.
 {¶ 47} Similarly, the assertions made in Smith's second and fourth assignments of error regarding the trial court's requirement that he wear a stun belt during trial and the claim of ineffective assistance of defense counsel are moot given our disposition of the first assignment of error. We therefore decline to address them on their merits.
 {¶ 48} Accordingly, we reverse the judgment of the trial court and remand this case for a new trial.
Judgment reversed and cause remanded.
Sundermann, P.J., and Doan, J., concur.
[2] State v. Taylor, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, at ¶ 50.
[3] State v. Keenan, 81 Ohio St.3d 133, 138, 1998-Ohio-459,689 N.E.2d 929, citing McKaskle v. Wiggins (1984), 465 U.S. 168, 183,104 S.Ct. 944; State v. Thompson (1987), 33 Ohio St.3d 1, 514 N.E.2d 407.
[4] See State v. Gibson (1976), 45 Ohio St.2d 366, 345 N.E.2d 399;Faretta v. California (1975), 422 U.S. 806, 95 S.Ct. 2525.
[5] (1975), 422 U.S. 806, 95 S.Ct. 2525.
[6] Id. at 819-820.
[7] See State v. Cassano, 96 Ohio St.3d 94, 100, 2002-Ohio-3751,772 N.E.2d 81, at ¶ 38.
[8] State v. Vrabel, 99 Ohio St.3d 184, 2003-Ohio-3193,790 N.E.2d 303.
[9] State v. Gibson, supra, paragraph two of the syllabus.
[10] See State v. Obermeyer, 152 Ohio App.3d 360, 2003-Ohio-1741,787 N.E.2d 729.
[11] Obermeyer, supra, citing State v. Vordenberge, 148 Ohio App.3d 488,2002-Ohio-1612, 774 N.E.2d 278.
[12] Vordenberge, supra, at 493, 2002-Ohio-1612, 774 N.E.2d 278, citingState v. Watson (1998), 132 Ohio App.3d 57, 64, 724 N.E.2d 469.
[13] McKaskle, supra, at 184, 104 S.Ct. 944.
[14] Id. at 178-179, 104 S.Ct. 944.
[15] See Section 5(B), Article IV, Ohio Constitution; State v.Singer (1977), 50 Ohio St.2d 103, 110, 362 N.E.2d 1216.
[16] 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72.
[17] (1998), 132 Ohio App.3d 57, 66, 724 N.E.2d 469.
[18] See State v. Cassano, supra.
[19] State v. Vrabel, supra.