OPINION
{¶ 1} Appellant, Daniel K. Simmons, appeals from the August 19, 2004 judgment entry of the Lake County Court of Common Pleas, in which he was sentenced for abduction, kidnapping, and driving without a valid license.
 {¶ 2} On May 18, 2004, appellant was indicted by the Lake County Grand Jury on four counts: count one, driving while under the influence of alcohol or drugs ("DUI"), a felony of the third degree, in violation of R.C. 2929.13(G)(2); count two, abduction, a felony of the third degree, in violation of R.C. 2905.02(A)(2); count three, kidnapping, a felony of the first degree, in violation of R.C. 2905.01(A)(3); and count four, driving without a valid license, a misdemeanor of the first degree, in violation of R.C. 4507.02(A)(1). On June 10, 2004, appellant filed a waiver of his right to be present at the arraignment, and the trial court entered a not guilty plea on his behalf.
 {¶ 3} On June 21, 2004, appellant filed a motion for self-representation. A hearing was held on July 1, 2004. The trial court granted appellant's motion for self-representation and appointed an assistant public defender to serve as standby counsel.
 {¶ 4} A jury trial commenced on August 9, 2004.
 {¶ 5} At the jury trial, Linda Koynock ("Koynock") testified for the state that she was appellant's girlfriend. Koynock stated that she and appellant had a three-year relationship and the couple lived together at her house in Willoughby, Ohio. On February 18, 2004, Koynock decided to spend the night at her neighbor's because she and appellant were fighting.[1] On February 19, 2004, at about 9:15 a.m., Koynock returned home. She indicated that an argument immediately ensued between herself and appellant. According to Koynock, appellant tied her hands and feet with telephone cord and wrapped tape around her head, covering her mouth. She said that appellant called her a "pig," and held her arms and legs in place to bind her wrists and ankles.
 {¶ 6} Koynock testified that after being tied up, appellant carried her outside, put her in the trunk of her Cadillac, and drove around. She could hear appellant talking while he was driving the car. Koynock thought that appellant was going to sink her vehicle in a body of water with her trapped in the trunk. During the ride, Koynock managed to partially remove the telephone cord and pulled the tape off her mouth. After she felt around the trunk for a while, the trunk lid popped open while the car was moving, although she was not sure how that happened. Koynock started screaming "help me."
 {¶ 7} Carol Perfetto ("Perfetto") testified for the state that on the day at issue, she was sitting inside her vehicle at the intersection of Routes 6 and 306 in Kirtland, Ohio. She observed Koynock pop out of the trunk of a Cadillac, screaming hysterically for help and running into an adjacent parking lot. Perfetto followed Koynock into the parking lot to provide assistance. Perfetto stated that the Cadillac pulled into a parking lot across the street. Koynock was still partially bound and gagged with telephone cord wrapped around her hands and feet and duct tape around her neck. Koynock entered Perfetto's vehicle, crying hysterically. Perfetto said that Koynock did not want her to call 9-1-1 because she was fearful for her life since appellant was in eye's view. However, Perfetto dialed 9-1-1. Approximately five minutes later, appellant drove away in Koynock's Cadillac, and within minutes, was pulled over and arrested by officers from the Kirtland Police Department.
 {¶ 8} At the close of the state's case, appellant moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court.[2] On August 11, 2004, the jury returned a verdict of not guilty on count one, DUI. The jury found appellant guilty of count two, abduction; count three, kidnapping; and count four, driving without a valid license.
 {¶ 9} Pursuant to its August 19, 2004 judgment entry, the trial court sentenced appellant to serve four years in prison on count two; eight years on count three; and six months on count four. The trial court ordered the sentences to be served concurrent with each other, but consecutive to a previous sentence imposed, Case No. 03-CR-000523. The trial court suspended appellant's driver's license for one year, which is to commence on May 7, 2017.[3] In addition, the trial court notified appellant that post-release control was mandatory up to a maximum of five years. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 10} "[1.] The trial court violated [appellant's] constitutional right to due process as guaranteed by the Sixth
and Fourteenth Amendments to the United States Constitution and Sections 5 and 10, Article I of the Ohio Constitution when the trial judge demonstrated unreasonable judicial bias.
 {¶ 11} "[2.] The trial court violated [appellant's] constitutional right of self-representation as guaranteed by theSixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.
 {¶ 12} "[3.] The trial court erred to the prejudice of [appellant] in denying his motion for acquittal made pursuant to Crim.R. 29(A).
 {¶ 13} "[4.] The trial court erred to the prejudice of [appellant] when it returned a verdict of guilty against the manifest weight of the evidence.
 {¶ 14} "[5.] The trial court erred when it sentenced [appellant] to consecutive sentences based upon a finding of factors not found by the jury or admitted by [appellant] in violation of [appellant's] state and federal constitutional rights to trial by jury."
 {¶ 15} In his first assignment of error, appellant argues that the trial court violated his due process rights because the trial judge demonstrated unreasonable bias. Appellant stresses that the trial court's repeated derogatory remarks and unreasonable admonitions constituted judicial bias, which prejudiced his ability to assert a defense.
 {¶ 16} This court stated in State v. Miller, 11th Dist. No. 2004-T-0082, 2005-Ohio-5283, at ¶ 20-22, that:
 {¶ 17} "[i]n Ohio, the trial judge is charged with the duty of controlling a criminal trial. R.C. 2945.03 states: `The judges of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding matters in issue.' See[,] also, State v. Blumensaadt,
11th Dist. No. 2000-L-107, * * * 2001 Ohio App. LEXIS 4283, at 26[;] State v. Jaryga, 11th Dist. No. 2003-L-023,2005-Ohio-352, at ¶ 61 * * *.
 {¶ 18} "When exercising this duty, a judge must be cognizant of the effect of his or her comments upon the jury. State v.Wade (1978), 53 Ohio St.2d 182, 187 * * *. Thus, it is incumbent upon the judiciary to remain detached and neutral in any proceeding before it. State v. Hardy (Oct. 10, 1997), 11th Dist. No. 96-P-0129, 1997 Ohio App. LEXIS 4588, at 20. `However, this does not mean that a trial judge is precluded from making comments during the course of the trial.' Hardy at 20. Instead, when determining whether or not a trial judge's comments were appropriate, a reviewing court must decide whether the remarks were prejudicial to a defendant's right to a fair trial. Wade
at 188; Hardy at 20-21.
 {¶ 19} "To facilitate this inquiry, the Supreme Court of Ohio has provided the following factors to consider: `(1) The burden of proof is placed upon the defendant to demonstrate prejudice[;] (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for[;] (3) the remarks are to be considered in light of the circumstances under which they are made[;] (4) consideration is to be given to their possible effect upon the jury; and (5) to their possible impairment of the effectiveness of counsel.' Wade at 188. See, also, City of Mentor v.Richardson (Dec. 26, 1997), 11th Dist. No. 96-L-155, 1997 Ohio App. LEXIS 5853, at 6-7; Hardy at 21." (Parallel citations omitted.)
 {¶ 20} Crim.R. 52(B) provides that: "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An appellate court should invoke the plain error doctrine with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice. State v. Jenks (1991),61 Ohio St.3d 259, 282; State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Thus, plain error does not exist unless, but for the error, the outcome of the proceeding would have been different. Jenks, supra, at 282; Long, supra, at paragraph two of the syllabus.
 {¶ 21} In the case at bar, we note that appellant failed to object to the content of any judicial statements as being prejudicial to his constitutional rights. However, under Crim.R. 52(B), this court has the power to recognize plain error or defects involving substantial rights even if they are not brought to the attention of the trial court. Miller, supra, at ¶ 23, citing State v. Haines, 11th Dist. No. 2003-L-035,2005-Ohio-1692, at ¶ 30.
 {¶ 22} Appellant alleges judicial bias with respect to the following: first, three exchanges between himself and the trial court judge during appellant's cross-examination of a state's witness; second, one instance where the trial court judge solicited an objection from the state; and third, eight sustained objections of the state during appellant's closing argument.
 {¶ 23} Specifically, first, appellant contends that during his cross-examination of Wayne Baumgart ("Chief Baumgart"), Kirtland Police Department's Chief of Police, the trial court judge continually interrupted his questioning. A review of the transcript reveals that appellant asked Chief Baumgart whether "any cars * * * normally have a tendency to look in their review mirror to see why * * * people are merging over?" Chief Baumgart responded that he could not answer appellant's question regarding what others are thinking. The trial court judge interjected by stating that "[Chief Baumgart] doesn't know what they're thinking, as much as you don't know what they're thinking." Appellant said, "Okay. Alright."
 {¶ 24} During the same cross-examination, appellant maintains that the trial court judge denied him the chance to correct a mistake, but rather used the opportunity to make a joke in front of the jury. Appellant asked Chief Baumgart where he was standing when appellant first exited the vehicle. Chief Baumgart replied that appellant was probably at his left rear tail light. Appellant said, "Right here?" Chief Baumgart responded, "No that's the right — [.]" At that time the trial judge stated, "The other left."
 {¶ 25} Later in the same cross-examination, appellant contends that the trial judge interrupted him in an attempt to question Chief Baumgart concerning an identifying factor of intoxication. The transcript reveals that appellant asked Chief Baumgart whether the odor of alcohol that he smelled on him was proof that he was not able to operate a motor vehicle. The trial judge stated that odor alone does not make someone impaired and appellant agreed. The trial judge then told appellant that his question did not make sense and to ask it in a different manner.
 {¶ 26} Second, appellant takes issue with the trial court judge soliciting an objection from the state during the cross-examination of Koynock. Appellant asked Koynock if she had ever lied to the police. She responded that she was not aware of any incidents where she did not tell the truth to the police. The trial court judge asked appellant if he was referring specifically to the instant case. Appellant responded, "No, just in general." The trial court judge then asked if there was an objection. The prosecutor said that there was and the trial court judge sustained the objection.
 {¶ 27} With regard to a trial judge's involvement in the administration of a jury trial, he or she must exercise greater restraint. In Mentor-On-The-Lake v. Giffin (1995),105 Ohio App.3d 441, 448-449, this court stated that:
 {¶ 28} "In State v. Perkins (1947), 130 W.Va. 708 * * *, the Supreme Court of West Virginia held:
 {¶ 29} "`In disposing of a similar question presented in the case of State v. Hurst, 11 W.Va. 54, this court laid down the following rule: "It is error for a court in a trial of a criminal cause, to make a remark to, or in the presence of the jury, in reference to matters of fact, which might in any degree influence them in their verdict." In the case of State v. Thompson,21 W.Va. 741, 756, this Court again adverted to the rule laid down in the Hurst case.
 {¶ 30} "`The rule is amplified and restated in the seventh point of the syllabus in the case of State v. Austin[,]93 W.Va. 704 * * *, as follows: "In the trial of a criminal case, the jurors, not the court, are the triers of the facts, and the court should be extremely cautious not to intimate in any manner, by word, tone, or demeanor, his opinion upon any fact in issue." In the case of State v. Hively, 103 W.Va. 237 * * *, this court held: "Under the practice in this State, the trial judge should express to the jury no opinion on the testimony, either directly or by innuendo.'"
 {¶ 31} "This similar rule has been adopted in Ohio.
 {¶ 32} "`In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness. In a jury trial, where the intensity, tenor, range and persistence of the court's interrogation of a witness can reasonably indicate to the jury the court's opinion as to the credibility of the witness or the weight to be given his testimony, the interrogation is prejudicially erroneous.' State ex rel. Wise v. Chand (1970),21 Ohio St.2d 113 * * *, paragraphs three and four of the syllabus." (Parallel citations omitted.)
 {¶ 33} Here, it appears that the trial court judge involved himself more than was necessary. However, we are unable to discern an attitude reflecting disdain for appellant or this particular proceeding, or that he was attempting to directly or inferentially indicate his view of the evidence or of the credibility of any witnesses. Thus, the foregoing cases on this issue are distinguishable from the case sub judice.
 {¶ 34} Each of the incidents at issue demonstrates the trial court's exercise of reasonable control over the mode and order of interrogating witnesses and presenting evidence in order to ascertain the truth; avoid needless consumption of time; and protect witnesses from harassment or undue embarrassment. Evid.R. 611(A). Additionally, we note that the trial court judge's one isolated attempt at misplaced good natured humor could not have been misunderstood by the jury, did not prejudice appellant's right to a fair trial, and did not rise to the level of judicial bias.
 {¶ 35} Third, appellant argues that judicial bias was displayed by the trial court judge during his closing argument. While giving his closing, the state objected on eight separate occasions, and each was sustained. After the eighth sustained objection, the trial court judge ordered appellant to have a seat and had standby counsel finish. The record reflects that each objection was properly sustained, and there was no evidence of judicial bias.
 {¶ 36} Appellant has provided us with no evidence that the outcome of his trial would have been different if none of the foregoing had occurred. We are not persuaded that the trial judge was biased or that any of the instances cited by appellant were prejudicial, much less that they amounted to plain error. Thus, appellant's first assignment of error is without merit.
 {¶ 37} In his second assignment of error, appellant contends that the trial court violated his constitutional right of self-representation when it prevented him from finishing his closing argument.
 {¶ 38} The Sixth and Fourteenth Amendments to the United States Constitution guarantee a state criminal defendant the constitutional right of self-representation when the defendant voluntarily, knowingly, and intelligently so elects. State v.Gibson (1976), 45 Ohio St.2d 366, paragraph one of the syllabus, citing Faretta v. California (1975), 422 U.S. 806.
 {¶ 39} The United States Supreme Court stated in Faretta,
supra, at 834, that: {¶ 40} "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct. * * * Of course, a State may — even over objection by the accused — appoint a `standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary. * * * The right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law. * * *" (Citations omitted.)
 {¶ 41} In the instant matter, appellant did not raise an objection when he was ordered to take his seat and standby counsel was asked to finish the closing argument. Thus, pursuant to Crim.R. 52(B), appellant's second assignment of error is subject to a plain error analysis.
 {¶ 42} Appellant maintains that this case is analogous toState v. Smith, 1st Dist. No. C-020610, 2004-Ohio-250. We disagree. In Smith, the First District held that appellant's constitutional right to defend himself was denied. Id. at ¶ 45. Thus, the court reversed the trial court's judgment and remanded the case for a new trial. Id. We note that the trial court inSmith did not merely appoint standby counsel to assist the appellant. Rather, the trial court ordered defense counsel to remain on the case and to actively participate, against the wishes of the appellant. Id. at ¶ 43.
 {¶ 43} Here, standby counsel was appointed to assist appellant. The record does not establish that standby counsel "actively participated" in any manner. Instead, the trial court judge asked standby counsel to finish the closing argument after the eighth objection by the state was sustained. As such, appellant's reliance on Smith, supra, is misplaced.
 {¶ 44} From the outset, the trial court judge warned appellant, when he requested to represent himself, that he would not be able to give unsworn testimony to the jury unless he chose to take the stand. Appellant was warned again during closing arguments that since he did not take the stand, he would not be able to provide unsworn testimony to the jury. However, appellant attempted numerous times to testify while giving his closing argument. Again, the state's objections were sustained by the trial court. The trial court judge warned appellant two more times, which appellant disregarded. The record shows that the trial court judge gave appellant numerous opportunities to correct his course of conduct, however, appellant failed to comply.
 {¶ 45} Pursuant to Faretta, supra, the trial court judge did not commit plain error by terminating appellant's right to self-representation, due to his misconduct, by ordering standby counsel to provide assistance during the closing argument. Appellant's second assignment of error is without merit.
 {¶ 46} In his third assignment of error, appellant alleges that the trial court erred by denying his motion for acquittal pursuant to Crim.R. 29(A). Appellant stresses that the abduction and kidnapping charges should have been dismissed when the state failed to prove all the essential elements of the charges. Appellant maintains that the verdict was not supported by sufficient evidence that force or threat was involved, or that he terrorized Koynock or inflicted serious physical harm.
 {¶ 47} In State v. Bridgeman (1978), 55 Ohio St.2d 261, the Supreme Court of Ohio established the test for determining whether a Crim.R. 29 motion for acquittal is properly denied. The Supreme Court stated that: "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." Id. at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." State v.Patrick, 11th Dist. Nos. 2003-T-0166 and 2003-T-0167, 2004-Ohio-6688, at ¶ 18.
 {¶ 48} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 13-14:
 {¶ 49} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 50} "`"(* * *)The test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claimof insufficient evidence invokes an inquiry about due process. Itraises a question of law, the resolution of which does not allowthe court to weigh the evidence. * * *"'
 {¶ 51} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' * * * `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' * * *" (Emphasis sic.) (Citations omitted.)
 {¶ 52} "* * * [A] reviewing court must look to the evidence presented * * * to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt." State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 Ohio App. LEXIS 3333, at 8. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. Jenks, supra, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact.State v. Dennis (1997), 79 Ohio St.3d 421, 430.
 {¶ 53} In the case sub judice, appellant is challenging his abduction and kidnapping convictions.
 {¶ 54} With respect to abduction, R.C. 2905.02(A)(2) provides that: "[n]o person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear[.]"
 {¶ 55} Regarding kidnapping, R.C. 2905.01(A)(3) states that: "[n]o person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, [in order] [t]o terrorize, or to inflict serious physical harm on the victim or another[.]"
 {¶ 56} With regard to both the abduction and kidnapping convictions, appellant alleges that the state failed to prove that he used force or threat during the incident at issue. We disagree.
 {¶ 57} R.C. 2901.01(A)(1) provides that: "`[f]orce' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."
 {¶ 58} Here, the evidence establishes that force was used on Koynock. Again, according to Koynock, appellant tied her hands and feet with telephone cord and wrapped tape around her head, covering her mouth. She said that appellant called her a "pig," and held her arms and legs in place to bind her wrists and ankles. Koynock testified that appellant put her in the trunk of her Cadillac, and drove around. Koynock thought that appellant was going to sink her vehicle in a body of water with her trapped in the trunk. Koynock managed to partially remove the telephone cord and pulled the tape off her mouth.
 {¶ 59} Further, Perfetto testified that she observed Koynock pop out of the trunk, screaming hysterically for help and running into an adjacent parking lot. Perfetto stated that Koynock was still partially bound and gagged with telephone cord wrapped around her hands and feet and duct tape around her neck.
 {¶ 60} In addition, appellant maintains that the state also failed to prove that he terrorized or caused serious physical harm to Koynock, two essential disjunctive elements of the kidnapping conviction. We disagree. In addition to the foregoing evidence, we note that Koynock feared for her life, attempted to cry out for help while locked in the trunk, tried to escape, and screamed for help when the trunk lid popped open.
 {¶ 61} Pursuant to Schlee, supra, there exists substantial evidence upon which the jury could reasonably conclude beyond a reasonable doubt that all of the elements of the abduction and kidnapping offenses have been proven. Appellant's third assignment of error is without merit.
 {¶ 62} In his fourth assignment of error, appellant argues that the trial court erred when it returned a verdict of guilty against the manifest weight of the evidence. Appellant alleges that the convictions for kidnapping and abduction were against the manifest weight of the evidence since there was no proof beyond a reasonable doubt that he abducted or kidnapped Koynock.
 {¶ 63} As this court stated in Schlee, supra, at 14-15: {¶64} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 65} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 66} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 67} In this case, appellant stresses that Koynock had been drinking the night before as well as the next morning when the incident occurred, and contradicted herself throughout her testimony. As such, appellant alleges that her testimony was not reliable.
 {¶ 68} We note that the jury is in the best position to assess the credibility of witnesses. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Reviewing the record in its entirety, it is clear that appellant abducted and kidnapped Koynock. Pursuant to Schlee and Thompkins, supra, the jury did not clearly lose its way in convicting appellant of those crimes. Therefore, appellant's fourth assignment of error is without merit.
 {¶ 69} In his fifth assignment of error, appellant maintains that the trial court erred when it sentenced him to consecutive sentences based upon factors not found by the jury or admitted by him in violation of his constitutional rights to trial by jury.
 {¶ 70} R.C. 2929.14(B) provides in part that:
 {¶ 71} "* * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 72} "(1) The offender was serving a prison term at the time of the offense, or the offender previously had served a prison term.
 {¶ 73} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 74} R.C. 2929.14(E)(4) states in part that:
 {¶ 75} "[i]f multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 76} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 77} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 78} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 79} When consecutive sentences are imposed under R.C.2929.14(E), the trial court must also follow the requirements of R.C. 2929.19(B)(2)(c), which provides that the trial court justify the imposition of consecutive sentences by giving its reasons.
 {¶ 80} Here, the trial court determined in its August 19, 2004 judgment entry and stated at the sentencing hearing that consecutive sentences are "necessary to protect the public and to punish the offender. Consecutive sentences would not be disproportionate to the seriousness of the offender's conduct, and the danger he poses. These crimes were committed while awaiting trial on case number 03CR000523, pending in this Court before this Judge. The Court also finds the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. This Court's firm belief that [appellant] is a danger to society, and that his breaking bond, breaking bail, by committing another serious felony has to be addressed to protect the public from [appellant] and others who would convince a Judge to let them out on bond just to commit another felony. * * *"
 {¶ 81} Based on the foregoing, the trial court complied with R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2)(c) by imposing consecutive sentences on appellant.
 {¶ 82} The Supreme Court in State v. Comer,99 Ohio St.3d 463, 2003-Ohio-4165, paragraph two of the syllabus, stated that: "[p]ursuant to R.C. 2929.14(B), when imposing a nonminimum sentence on a first offender, a trial court is required to make its statutorily sanctioned findings at the sentencing hearing." "Thus, there is a cogent basis to conclude that the same rationale applies to the imposition of a nonminimum sentence involving a defendant who has previously served a prison term. R.C. 2929.14(B)(1)." State v. Ross, 11th Dist. No. 2002-A-0077,2004-Ohio-2304, at ¶ 35.
 {¶ 83} According to Apprendi v. New Jersey (2000),530 U.S. 466, 490, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."
 {¶ 84} "Blakely [v. Washington (2004), 542 U.S. 296] refined the Apprendi rule when it held that `the "statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in thejury verdict or admitted by the defendant.' (Emphasis sic.)"State v. Rupert, 11th Dist. No. 2003-L1-54, 2005-Ohio-1098, at ¶ 45, quoting Blakely, supra, at 303.
 {¶ 85} As a general rule, sentences that fall within the statutory range do not violate the constitutional provision regarding excessive punishments. State v. Gladding (1990),66 Ohio App.3d 502, 513, citing McDougle v. Maxwell (1964),1 Ohio St.2d 68, 69. "`When a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.'" State v. Allen, 11th Dist. No. 2004-L-038,2005-Ohio-1415, at ¶ 33, quoting United States v. Booker
(2005), 125 S.Ct. 738, 750.
 {¶ 86} Blakely and Apprendi are distinguishable from the instant case because they deal with sentencing for a single crime.
 {¶ 87} We stated in Rupert, supra, at ¶ 47, that:
 {¶ 88} "Ohio courts have consistently held Apprendi does not apply to consecutive sentences as long as the sentence does not exceed the statutory maximum for each individual underlying offense. See State v. Carter, 6th Dist. No. L-00-1082, [2002-Ohio-3433, at ¶ 25] * * *. Accord, State v. Gambrel (Feb. 2, 2001), 2d Dist. No. 2000-CA-29, 2001 Ohio App. LEXIS 339, * * * at 4; State v. Brown, 2d Dist. No. 18643, [2002-Ohio-277], * * * at 5 * * *; State v. Wilson (Oct. 25, 2002), 6th Dist. No. L-01-1196, [2002-Ohio-5920]. Federal courts have also held consecutive sentences do not conflict with Apprendi. SeeUnited States v. Wingo (C.A.6, 2003), 76 Fed.Appx. 30, at 35;United States v. Sauceda (C.A.6, 2002), 46 Fed.Appx. 322, at 323. [See, also, Booker, supra.] Nothing in Blakely changes this rule." (Parallel citations omitted.)
 {¶ 89} In the case sub judice, the trial court stated at the sentencing hearing that: "I find no factors making * * * these offenses less serious. In terms of recidivism, most importantly I find that [these] offense[s] [were] committed while I let this man out on bail on his [second] felony DUI offense." In addition, the trial court indicated that: "* * * the shortest prison term will demean the seriousness of [appellant's] conduct, and the shortest prison term will not adequately protect the public from future crime by [appellant] or others similarly minded." As such, the trial court complied with R.C. 2929.14(B) by imposing a nonminimum sentence on appellant.
 {¶ 90} Here, appellant was not sentenced for a single crime, but rather was sentenced to a term of four years on count two, abduction, a third degree felony; eight years on count three, kidnapping, a first degree felony; and six months on count four, driving without a valid license, a first degree misdemeanor, to be served concurrently with each other, and consecutively with a previously imposed sentence. The standard statutory range for first degree felonies is three to ten years, and one to five years for felonies of the third degree. R.C. 2929.14(A)(1) and (3). The maximum sentence for a first degree misdemeanor is one hundred-eighty days. R.C. 2929.24(A)(1). Thus, the trial court sentenced appellant within the statutory range for his felony convictions and sentenced him to the maximum with respect to his misdemeanor conviction. As such, because appellant's sentence did not go beyond the maximum, Blakely is not applicable. Rupert,
supra, at ¶ 47. Thus, with respect to the instant case, Ohio's sentencing scheme is not unconstitutional in light of Apprendi,Blakely, and Booker. Appellant's fifth assignment of error is without merit.
 {¶ 91} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
Grendell, J., Rice, J., concur.
[1] Koynock said that her next door neighbor's name was Bill, but that she did not know his surname.
[2] Appellant did not put on defense evidence.
[3] The trial court noted that appellant's driver's license was permanently suspended in Case No. 03-CR0-00523.