OPINION
{¶ 1} Appellant, Debra's Bail Bonds, appeals the decision of the Youngstown Municipal Court refusing to remit part of two forfeited bonds posted for a criminal defendant who failed to appear at multiple court appearances. The record reflects a cavalier attitude on the part of the bonding company regarding the issuance of the bonds and in attempting to discover the whereabouts of the defendant after he had missed a variety of court appearances. The trial court did not abuse its discretion, and the judgment is affirmed.
 {¶ 2} Since the bonding company is the Appellant in this case, the defendant will simply be referred to by his name, Darrell Sinkfield, or as defendant.
 {¶ 3} This appeal involves two underlying misdemeanor cases from Youngstown Municipal Court. Case No. 01TRD4907 started on July 27, 2001, with the issuance of a traffic citation for driving under suspension. Sinkfield failed to appear for his original hearing. He was arrested and a $1,000 bond was posted. Sinkfield pleaded guilty and was sentenced to 180 days in jail, with 60 days suspended and 60 days of monitored house arrest. A show cause order was issued May 29, 2003, and Sinkfield failed to appear. He was arrested, then failed to appear again on October 24, 2003. He was arrested again, and failed to appear a further time on December 5, 2003. Sinkfield was absent for 2 and 1/2 years before he was apprehended on July 6, 2006. Appellant posted bond of $5,000 at that time. Sinkfield once again failed to appear at his next hearing on July 13, 2006.
 {¶ 4} Case No. 03TRD2421 started with a citation issued on April 18, 2003, for driving under suspension and failure to stop at a stop sign. Sinkfield failed to *Page 2 
appear at his pretrial on May 29, 2003, and was arrested. After Sinkfield was arrested on July 6, 2006, Appellant posted an additional $5,000 bond in the second case.
 {¶ 5} The court held a hearing on the bond forfeitures on October 10, 2006. Sinkfield failed to appear once again. Judgment was entered forfeiting both bonds for a total of $10,000. Sinkfield was not apprehended again until April 23, 2007. The state dismissed the two charges in Case No. 03TRD2421 on May 8, 2007. Appellant filed a motion to remit the forfeited bonds on October 22, 2007. The court held a hearing on November 28, 2007. The court filed a three-page judgment entry denying the motion on December 5, 2007. This appeal followed on April 16, 2008. There is no record of the date when the trial court sent a copy of the judgment to Appellant. Thus, on April 29, 2008, we filed a journal entry acknowledging that the appeal was timely filed.
 {¶ 6} Appellee has not filed a brief in this case. Pursuant to App. R. 18(C), this Court, "may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."
 ASSIGNMENT OF ERROR {¶ 7} "The trial court abused its discretion in denying the motion for remission of penalty filed by the surety for Darrell Sinkfield, Debra Stevens dba Debra's Bail Bonds." *Page 3 
 {¶ 8} The purpose of bail is to ensure that a criminal defendant appears at all stages of the criminal proceedings. State v. Hughes
(1986), 27 Ohio St.3d 19, 20, 27 OBR 437, 501 N.E.2d 622; Smith v.Leis, 106 Ohio St.3d 309, 2005-Ohio-5125, 835 N.E.2d, ¶ 34; Reynolds v.United States (1959), 80 S.Ct. 30, 32, 4 L.Ed.2d 46. Crim. R. 46(I) states: "Any person who fails to appear before any court as required is subject to the punishment provided by the law, and any bail given for the person's release may be forfeited."
 {¶ 9} R.C. 2937.39 allows a surety to request the court to remit some or all of a forfeited bond:
 {¶ 10} "After judgment has been rendered against surety or after securities sold or cash bail applied, the court or magistrate, on the appearance, surrender, or rearrest of the accused on the charge, may remit all or such portion of the penalty as it deems just and in the case of previous application and transfer of cash or proceeds, the magistrate or clerk may deduct an amount equal to the amount so transferred from subsequent payments to the agencies receiving such proceeds of forfeiture until the amount is recouped for the benefit of the person or persons entitled thereto under order or remission."
 {¶ 11} A trial court's decision regarding the remission of a forfeited bond is reviewed for abuse of discretion. State v. American Bail BondAgency (1998), 129 Ohio App.3d 708, 713, 719 N.E.2d 13. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or *Page 4 
unconscionable and not merely an error of law or judgment. State v.Adams (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.
 {¶ 12} We have previously dealt with the remission of bail bonds inState v. Smith, 7th Dist. No. 05 JE 49, 2006-Ohio-4614. InSmith, we determined that a denial of a motion for remission of part or all of a bail bond is a final appealable order.
 {¶ 13} Smith identified six factors for the trial court to consider in a motion to remit a bond:
 {¶ 14} "1. The circumstances surrounding the subsequent appearance by the defendant, including the timing, and whether her reappearance was voluntary;
 {¶ 15} "2. The reasons for defendant's failure to appear * * *;
 {¶ 16} "3. The inconvenience, expense, delay and any other prejudice to the prosecution;
 {¶ 17} "4. Whether the [sureties were] instrumental in securing the appearance of the defendant;
 {¶ 18} "5. Any mitigating circumstances; and
 {¶ 19} "6. Whether justice requires that the entire amount of the bail remain forfeited." Id. at ¶ 37-42, citing State v. American Bail BondAgency, supra.
 {¶ 20} Smith also held that: "`when considering a request for post-appearance bond remission pursuant to R.C. 2937.39, a trial court should balance the reappearance of the accused and the efforts expended by the surety to effectuate the reappearance against the inconvenience, expense, and delay suffered by the *Page 5 
state and any other factors the court finds relevant.'" Id. at ¶ 44, quoting State v. Jackson, 153 Ohio App.3d 520, 2003-Ohio-2213,795 N.E.2d 57, at ¶ 9.
 {¶ 21} Appellant argues that the state did not offer any evidence at the remission hearing, and thus, that the motion for remission should have been granted. Since the burden was on Appellant to prove that the court should remit part of the forfeited bond, the state was not required to offer evidence. "[T]he surety * * * bears the burden of proof on the matter of remission and its amount, [and] the surety must present evidence relevant to the costs and inconvenience incurred."State v. Thornton, 2nd Dist. No. 20963, 2006-Ohio-786, ¶ 18. Obviously, the state takes a risk in not presenting any evidence, as it may deprive the trial court from considering the state's perspective on the factors the court considers, especially regarding any prejudice or expense that the state may have suffered due to the defendant's failure to appear. Nevertheless, failure of the state to present evidence is not a reason in and of itself for remitting a forfeited bond.
 {¶ 22} The trial court heard the testimony of Mr. Horvath, who was the managing general agent of Debra's Bail Bonds. Mr. Horvath was responsible for any bonds approved by Appellant's bonding company. (Tr., p. 9.) Debra Stevens did not testify at the remission hearing. Horvath testified that the defendant's mother, Christine Sinkfield, requested the bail bond. The trial court found that Horvath performed little if any investigation into the defendant's criminal history, and simply asked Christine Sinkfield a few basic questions to identify herself. The court noted *Page 6 
that Ms. Sinkfield's answers were not verified and that Horvath failed to ask her whether the defendant had any history of failure to appear.
 {¶ 23} The trial court was particularly struck by Mr. Horvath's "cavalier attitude" regarding whether or not the defendant for whom a bond is posted actually appears at hearings. Horvath himself testified that, "[o]ur interest lies mainly in the co-signer, not in the Defendant." (Tr., p. 10). He also said that, "our main concern is going to be try to get the person out of jail and whether or not we can collateralize it to insure that the insurance company is not going to lose money." (Tr., p. 11.) Their concern was not whether the defendant actually appeared in court. Mr. Horvath testified: "[W]e felt that even if he didn't show, which I knew [Sinkfield] had a history of not showing for courts, he didn't abscond from the area and we would always, once again, bring him in. Someone would pick him up along the way." (Tr., p. 11.)
 {¶ 24} The trial court overruled the motion for remission based in large part on the, "compelling public interest in discouraging bail bond companies from posting bond without adequate investigation." (12/4/07 J.E., p. 1.)
 {¶ 25} In Smith, we specifically approved when the trial court used the surety's screening practices as a factor in refusing to remit a forfeited bond: "the only incentive [the trial court] could give this company to make better choices in bonding was not to remit the bond in this case. The trial court did not abuse its discretion in considering this factor; the factor is relevant to its decision." Id. at ¶ 57. This appears to be the same type of consideration the trial court applied in the instant case. We *Page 7 
can find no error in the factors the trial court used to make its decision, and the record supports the findings made by the trial court.
 {¶ 26} It is worth noting that Appellant did not attempt to prove that Sinkfield had any legitimate reasons for missing one court appearance after another, or that he had ever voluntarily appeared in court after he had skipped a required court appearance. The record indicates that, time after time, the police needed to locate and arrest Sinkfield in order to secure his appearance. Appellant's agent Lance Gremling testified that he was asked in December of 2007 to find Sinkfield, some five months after Sinkfield had absconded in July, 2007. Gremling checked some basic public records and called Christine Sinkfield, but was not able to locate the defendant. Gremling found an address that he thought might have been Sinkfield's former address, and observed the residence on three separate occasions starting on April 10, 2008. Gremling spent approximately five hours total trying to locate Sinkfield. There is no evidence that Gremling, Horvath, or anyone associated with Appellant contacted the police so that Sinkfield could be apprehended. It is difficult to interpret this evidence in Appellant's favor to warrant the remission of the forfeited bonds.
 {¶ 27} The record cannot reasonably be interpreted to establish any abuse of discretion in this case. Appellant posted bonds for a defendant who had already failed to appear multiple times, and who had absconded for more than two years before being apprehended again. Because we find no error in the trial court's judgment, we affirm the judgment in full. *Page 8 
Vukovich, P.J., concurs.
DeGenaro, J., concurs. *Page 1