**[Cite as *State v. Harvey*, 2024-Ohio-1004.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                    CASE NO. 1-23-35

  v.

JAQUAVEIUS E. HARVEY,

     DEFENDANT-APPELLEE,

                                            **O P I N I O N**

[DAWG TOWN, INC. DBA
ABC BAIL BONDS - APPELLANT]

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                    CASE NO. 1-23-36

  v.

JAQUAVEIUS E. HARVEY,

     DEFENDANT-APPELLEE,

                                            **O P I N I O N**

[DAWG TOWN, INC. DBA
ABC BAIL BONDS - APPELLANT]

**Appeals from Allen County Common Pleas Court
Trial Court No. CR 2021 0144 and CR 2021 0123**

**Judgments Affirmed**

**Date of Decision:  March 18, 2024**

**APPEARANCES:**

*Zachary D. Maisch* and *Andrew M. Bayer* **for Appellant**

*John R. Williamowski, Jr.* **for Appellee, State of Ohio**

**ZIMMERMAN, J.**

{¶1} Appellant, Dawg Town, Inc. ("Dawg Town"), dba ABC Bail Bonds, appeals the May 4, 2023 judgments of the Allen County Court of Common Pleas remitting $70,000 of a collective $150,000 bond. For the reasons that follow, we affirm.

{¶2} On April 15, 2021, the Allen County Grand Jury indicted defendant-appellee, Jaquaveius E. Harvey ("Harvey"), on six counts in case number CR 2021 0123: Counts One, Two, Three, and Four of felonious assault in violation of R.C. 2903.11(A)(2), (D)(1)(a), second-degree felonies; Count Five of improperly discharging a firearm at or into a habitation or school safety zone in violation of R.C. 2923.161(A)(1), (C), a second-degree felony; and Count Six of having weapons while under disability in violation of R.C. 2923.13(A)(2), (B), a third-degree felony. The indictment included a firearm specification as to Counts One through Five. That same day, the Allen County Grand Jury indicted Harvey on six

counts in case number CR 2021 0144: Count One of obstructing justice in violation of R.C. 2921.32(A)(4), (C)(4), a third-degree felony; Count Two of tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony; Count Three of possession of a fentanyl-related compound in violation of R.C. 2925.11(A), (C)(11)(c), a third-degree felony; Count Four of possession of heroin in violation of R.C. 2925.11(A), (C)(6)(c), a third-degree felony; Count Five of having weapons while under disability in violation of R.C. 2923.13(A)(2), (B), a third-degree felony; and Count Six of receiving stolen property in violation of R.C. 2913.51(A), (C), a fourth-degree felony.[1] Harvey filed written pleas of not guilty in both cases on April 23, 2021.[2]

{¶3} After Harvey was indicted, a warrant was issued for his arrest and bond was set at $75,000 in each case. On April 23, 2021, Harvey posted a collective $150,000 surety bond through Dawg Town as surety. In this case, Lawrence McClorrine ("McClorrine"), agent for Dawg Town, contracted with Universal Fire & Casualty Insurance Company ("Universal Insurance") as a surety for the issuance of the surety bonds.

{¶4} As conditions of his bond in each case, Harvey agreed to appear for weekly drug testing at the Allen County Probation Department as well as at all court

---

[1] On February 22, 2023, at the State's request, the trial court dismissed Counts Three and Four of the indictment in case number CR 2021 0144.

[2] The trial court consolidated the cases for purposes of trial on July 14, 2021 at the State's request.

hearings. However, after Harvey failed to appear for a final pre-trial hearing on September 23, 2021, the trial court on December 8, 2021 revoked Harvey's bonds and issued warrants for his arrest.

{¶5} The State filed motions on January 10, 2022 in both cases seeking to have Harvey's bonds forfeited. After a forfeiture hearing on February 11, 2022, the trial court on February 15, 2022 ordered Harvey's collective $150,000 bond forfeited and scheduled a show-cause hearing for April 12, 2021 to provide Dawg Town and Universal Insurance an opportunity "to show cause * * * why judgment should not be entered against each of them for penalties stated in the recognizance." (Case No. CR 2021 0123, Doc. No. 30); (Case No. CR 2021 0144, Doc. No. 53).

{¶6} On April 12, 2022, McClorrine, as agent for Dawg Town, and Universal Insurance filed motions in the trial court requesting "an Order Extending Time to Show Cause at Bond Forfeiture Hearing for ninety (90) days," which the trial court granted. (Case No. CR 2021 0123, Doc. No. 34); (Case No. CR 2021 0144, Doc. No. 57). Still unable to locate Harvey, McClorrine, as agent for Dawg Town, and Universal Insurance filed motions on May 24, 2022 requesting that the trial court issue "an Order Extending Time to Show Cause at Bond Forfeiture Hearing for sixty (60) days." (Case No. CR 2021 0123, Doc. No. 35); (Case No. CR 2021 0144, Doc. No. 58). On May 25, 2022, the State filed a memorandum in opposition to

McClorrine and Universal Insurance's motions requesting that the trial court extend the show-cause hearing.

**{¶7}** Because Harvey's "whereabouts were still unknown, and the sureties [had] not shown good cause as to why judgment should not be entered," the trial court entered judgments against and McClorrine, as agent for Dawg Town, and Universal Insurance in the amount of $75,000 in each case on July 12, 2022. (Case No. CR 2021 0123, Doc. No. 38); (Case No. CR 2021 0144, Doc. No. 60).

**{¶8}** In July 2022, McClorrine, as agent for Dawg Town, and Universal Insurance filed motions, respectively, requesting that the trial court reduce the amount of the bond forfeiture because it amassed $78,938.04 "of verifiable expenditures" in their efforts to apprehend Harvey. (Case No. CR 2021 0123, Doc. No. 40); (Case No. CR 2021 0144, Doc. No. 62. The State filed memoranda in opposition to McClorrine and Universal Insurance's motions on July 26, 2022. On August 15, 2022, the trial court denied McClorrine and Universal Insurance's motions.

**{¶9}** On October 20, 2022, McClorrine, as agent for Dawg Town, and Universal Insurance filed motions requesting relief from the bond forfeiture since Harvey was apprehended on October 12, 2022. After a hearing on November 18, 2022, the trial court ordered on May 4, 2023 that $70,000 of the collective $150,000 bond be remitted to Dawg Town "the entity listed in the Clerk of court's docket as

having paid the judgment * * * ." (Case No. CR 2021 0123, Doc. No. 61); (Case No. CR 2021 0144, Doc. No. 91).

{¶10} Dawg Town filed its notices of appeal on June 5, 2023 and this court consolidated the cases for purposes of appeal.[3] Dawg Town raises one assignment of error for our review.

### Assignment of Error

**The Trial Court Erred And Abused Its Discretion In Its Judgment Of Remitter Herein.**

{¶11} In its assignment of error, Dawg Town argues that the trial court abused its discretion by remitting only $70,000 of the collective $150,000 bond. Specifically, Dawg Town contends that the trial court's decision remitting only $70,000 of the collective $150,000 bond is unreasonable, arbitrary, and unconscionable because "[t]here is no evidence in the record except what was verbalized by the trial judge from sources outside the record." (Appellant's Brief at 5).

### *Standard of Review*

{¶12} "A trial court's ruling on a motion to remit a forfeited bond pursuant to R.C. 2937.39 is reviewed on appeal under an abuse of discretion standard." *State v. Dorsey*, 6th Dist. Lucas No. L-15-1289, 2016-Ohio-3207, ¶ 9. *See also State v.*

---

[3] The State dismissed the indictments in these cases without prejudice on May 24, 2023.

*Jackson*, 153 Ohio App.3d 520, 2003-Ohio-2213, ¶ 9 (3d Dist.). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

{¶13} When a trial court is considering whether to remit a bond forfeiture,

> the court should consider (1) the circumstances of the accused's reappearance, (2) his or her reason for failing to appear, (3) the prejudice afforded the prosecution by the accused's absence, (4) whether sureties helped return the defendant, (5) mitigating circumstances, and (6) whether justice requires that the entire amount remain forfeited.

*Dorsey* at ¶ 10. Specifically, "when considering a request for post-appearance bond remission pursuant to R.C. 2937.39, a trial court should balance the reappearance of the accused and the efforts expended by the surety to effectuate the reappearance against the inconvenience, expense, and delay suffered by the state and any other factors the court finds relevant." *Jackson* at ¶ 9.

{¶14} In this case, the trial court remitted $70,000 of the collective $150,000 bond after considering "the prejudice, expense, and delay occurred [sic] by the government, and the defendant's reasons for not appearing (solely to avoid prosecution)" as well as

> the 5-6 month delay by the sureties in beginning the efforts to locate [Harvey], the other legal means by which the sureties could recoup any losses through the indemnitors, the sureties' decision not to secure the bond with any collateral, and the sureties' failure to properly investigate the indemnitors'/defendant's ability to pay against the

efforts and expenditures ultimately made by the sureties to apprehend [Harvey].

(Case No. CR 2021 0123, Doc. No. 61); (Case No. CR 2021 0144, Doc. No. 91).

{¶15} On appeal, Dawg Town argues that the trial court abused its discretion by remitting only $70,000 of the collective $150,000 bond because the trial court "failed to require that the State meet its obligations in addressing the issues of forfeiture and remittance." (Appellant's Brief at 7). In particular, Dawg Town contends that the facts considered by the trial court in reaching its determination "are not addressed by evidence in the record" since "[t]he State failed to present any witnesses to provide testimony on these points even though an investigator was present at counsel table during the entire hearing." (*Id.* at 6). Instead, Dawg Town argues that the trial court failed to consider the evidence it put forth that Harvey was "arrested on his bench warrant on October 12, 2022, only two months after the sureties were paid" and that Dawg Town expended $80,905.61 locating Harvey. (*Id.* at 3).

{¶16} Dawg Town's arguments are misplaced. Foremost, it is not the State's burden to prove entitlement to remission of a forfeited bond. *See Dorsey* at ¶ 12 (noting that it is the surety's burden under R.C. 2937.39 to prove its entitlement to remission of a forfeited bond); *State v. Sinkfield*, 7th Dist. Mahoning No. 08 MA 75, 2009-Ohio-1033, ¶ 21 (emphasizing that "the burden was on [the surety] to prove that the court should remit part of the forfeited bond, the state was not required

to offer evidence"); *State v. Thornton*, 2d Dist. Montgomery No. 20963, 2006-Ohio-786, ¶ 18 (Grady, J., concurring) (asserting that a surety "bears the burden of proof on the matter of remission and its amount [and that] the surety must present evidence relevant to the costs and inconvenience incurred"). "Obviously, the state takes a risk in not presenting any evidence, as it may deprive the trial court from considering the state's perspective on the factors the court considers, especially regarding any prejudice or expense that the state may have suffered due to the defendant's failure to appear." *Sinkfield* at ¶ 21. "Nevertheless, failure of the state to present evidence is not a reason in and of itself for remitting a forfeited bond." *Id.*

**{¶17}** Furthermore, based on our review of the record, the trial court considered the appropriate factors in reaching its decision to remit only $70,000 of the collective $150,000 and the record supports the trial court's determination. *Accord State v. Guzman*, 3d Dist. Allen No. 1-16-27, 2017-Ohio-682, ¶ 13. Indeed, the trial court weighed the efforts expended by Dawg Town in locating and apprehending Harvey in favor of remittance. However, even though Dawg Town submitted evidence that it incurred $80,905.61 in expenses for locating and apprehending Harvey, the trial court questioned "the accuracy of the[] numbers." (Case No. CR 2021 0123, Doc. No. 61); (Case No. CR 2021 0144, Doc. No. 91). *See generally State v. Kammeyer*, 3d Dist. Seneca No. 13-19-48, 2020-Ohio-3842, ¶ 16 (noting that this court must "allow the trier of fact appropriate discretion on

matters relating to the weight of the evidence and the credibility of the witnesses"), citing *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶18} Weighing against remittance, the trial court considered the reasons behind Harvey's failure to appear; the inconvenience, expense, and delay suffered by the State; and the circumstances surrounding Harvey's bond itself. Addressing the factors weighing against remittance, the trial court found "that the U.S. Marshalls and the Allen County Sheriff's Office effectuated [Harvey's] reappearance over one year after [he] first absconded." (Case No. CR 2021 0123, Doc. No. 61); (Case No. CR 2021 0144, Doc. No. 91). Importantly, the trial court detailed that Harvey "was well aware that he had warrants and that the sureties and law enforcement were looking for him" but that Harvey "willfully chose not to appear to court, knowing that the sureties were trying to find him." (*Id.*); (*Id.*). Moreover, the trial court addressed the prejudice to the State as "the staleness of the case during [Harvey's] one year [sic] absence" in addition to the "expenses incurred by" law enforcement in apprehending Harvey. (*Id.*); (*Id.*). *See State v. Johnson*, 9th Dist. Lorain No. 19CA011452, 2020-Ohio-55, ¶ 18 (noting that, "[a]lthough the State did not present evidence at the hearing," the record reflects the prejudice to the State caused by the defendant's absence).

{¶19} Critically, the trial court weighed Dawg Town's due diligence in these cases against remitting the collective bond. *Compare Guzman* at ¶ 14 (weighing the

surety's due diligence since "the surety did not include a reasonable investigation of [Guzman's] background or necessary and routine steps to ensure [Guzman's] reappearance" because "the surety's procedures were loosey-goosey at least *and grossly* negligent at worst"). In particular, the trial court highlighted that Dawg Town began its efforts to locate and apprehend Harvey "[o]nly once the Court forfeited the bond," resulting in Harvey "having a 5-6 months [sic] 'head start' on the sureties." (Case No. CR 2021 0123, Doc. No. 61); (Case No. CR 2021 0144, Doc. No. 91). Moreover, the trial court detailed that Dawg Town did not provide any information regarding whether it acted to collect on cognovit notes from indemnitors on Harvey's collective $150,000.00 bond, "took any legal action to collect any portion of the forfeited bond, or took any proactive steps when deciding to post [Harvey's] bond to ensure any of the indemnitors were able to pay the full amount in the event of forfeiture." (*Id.*); (*Id.*).

{¶20} In sum, our review of the record reveals that the trial court considered the appropriate factors in its decision remitting only $70,000 of the collective $150,000 bond and that the record supports the trial court's determination. Importantly, it is evident that the trial court balanced Harvey's reappearance along with Dawg Town's efforts to effectuate his reappearance against the inconvenience, expense, and delay suffered by the State as well as the circumstances surrounding Harvey's bond itself when it determined that $70,000 of the $150,000 collective

-11-

bond should be remitted to Dawg Town. Consequently, we conclude that the trial court did not abuse its discretion by remitting only $70,000 of the collective $150,000 bond.

**{¶21}** Therefore, Dawg Town's assignment of error is overruled.

**{¶22}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**MILLER and ZMUDA, J.J., concur.**

**\*\*Judge Gene A. Zmuda of the Sixth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**